JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Reginald Patton ("appellant"), appeals his conviction for robbery. For the reasons set forth below, we affirm.
 {¶ 2} On February 24, 2006, the Cuyahoga County Grand Jury indicted appellant on one count of robbery in violation of R.C. 2911.02. He pleaded not guilty to the indictment.
 {¶ 3} The trial of this matter commenced on April 20, 2006. At trial the following pertinent facts were established.
 {¶ 4} Around 6:00 a.m. on February 2, 2006, Marie Jones ("the victim") was walking down East 105th Street in Cleveland, Ohio towards the bus stop on Union Avenue, when she saw a young man on a bicycle in the opposite direction pass her. He greeted the victim as he passed. She turned around to watch the man on the bicycle turn right to where she could no longer see him. She then turned back and continued to the bus stop. The victim later testified that she was "absolutely sure" appellant was the young man she saw riding the bicycle that day.
 {¶ 5} Shortly after appellant disappeared on the bicycle, the victim heard the sound of someone running behind her. She turned around and saw appellant running towards her. She attempted to step aside but appellant ran at her and punched her in the head. As a result of the blow, the victim fell to the ground, hitting her head on the concrete. While she was on the ground, appellant yanked a bag from her possession and ran south on East 105th Street. *Page 4 
 {¶ 6} The victim testified that the person that attacked her was the same person she saw moments earlier riding the bicycle. She was able to make this determination because she saw the perpetrator's face as he was running towards her but before he struck her. Additionally, the perpetrator of the crime was wearing the same coat as the person who rode the bicycle.
 {¶ 7} Chereese Tarver, a resident of East 105th Street where the crime occurred, heard the commotion on the street. As a result, she exited her home and saw the victim on the ground. She helped the victim to her house and they called 911.
 {¶ 8} Daryl Forest, also a resident of East 105th
Street, testified that from his yard, he saw appellant run down the street after the victim and punch her. Thereafter, appellant ran towards Forest Avenue and turned into a neighbor's yard. There, appellant jumped on his bicycle and proceeded up Benham Street. A few days later, Forest informed the police of his observations. Additionally, he identified appellant in a photo array as the perpetrator of the crime.
 {¶ 9} After the incident, Officer Eric Pruitt and his partner, Officer Anderson, patrolled the area and found appellant on Union Avenue nearby. He was the only individual in the area that matched the description given by the victim. The victim described the perpetrator as an African-American male, approximately 5'10" tall, wearing a dark jacket with lettering on it, and riding a bicycle. When the police stopped appellant, he voluntarily agreed to let the police detain him for an *Page 5 
identification. At the time of the stop, appellant was not in possession of the victim's bag or any of her belongings. The police transported appellant to the victim's residence to conduct a "cold stand" identification. While appellant was outside the victim's residence, the officers first showed the victim appellant's jacket and bicycle. She identified these items as belonging to the perpetrator. Then the police presented appellant for the victim's viewing. Officer Pruitt testified that the victim "100 percent positively identified [appellant]" as the perpetrator of the crime.
 {¶ 10} After the state rested its case, appellant moved for a Crim.R. 29 motion for acquittal. The court overruled his motion. Appellant then rested his case and made another motion for acquittal, which the trial court also denied. Subsequently, the jury proceeded to deliberation.
 {¶ 11} On April 21, 2006, the jury found appellant guilty of robbery. Three days later, the trial court sentenced appellant to a seven-year prison term.
 {¶ 12} Appellant now appeals and submits two assignments of error for our review. Appellant's first assignment of error states:
 {¶ 13} "Appellant was deprived his Due Process Rights because the "cold stand" identification of him after the robbery was improper and should not have been admitted at trial."
 {¶ 14} In his first assignment of error, appellant challenges the trial court's decision with regard to the admissibility of the "cold stand" identification. Initially, we note that appellant failed to raise this issue before the trial court and has therefore *Page 6 
waived all but plain error.
 {¶ 15} Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. State v. Moreland (1990),50 Ohio St.3d 58, 62, 552 N.E.2d 894; State v. Phillips, 74 Ohio St.3d 72,83, 1995-Ohio-171, 656 N.E.2d 643.
 {¶ 16} Courts apply a two-prong test in determining the admissibility of challenged identification testimony. First, the defendant bears the burden of demonstrating that the identification procedure was unnecessarily suggestive. If this burden is met, the court must consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. State v. Page, Cuyahoga App. No. 84341, 2005-Ohio-1493. "Stated differently, the issue is whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." State v. Willis (1997),120 Ohio App.3d 320, 324-25, 697 N.E.2d 1072, citing Manson v.Brathwaite (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140.
 {¶ 17} In a "cold stand," the victim, in a relatively short time after the incident, is *Page 7 
shown only one person and is asked whether the victim can identify the perpetrator of the crime. State v. Scott (May 11, 2000), Cuyahoga App. No. 76171. This court has previously explained the conditions necessary for a proper "cold stand" identification. A cold stand or one-on-one show-up identification is permissible as long as the trial court considers the following factors: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of the time between the crime and the confrontation."State v. Thompson, Cuyahoga App. No. 79938, 2002-Ohio-2390, citingNeil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.
 {¶ 18} In the instant matter, competent credible evidence supports admission of the "cold stand" identification. The victim had ample opportunity to view appellant prior to and during the crime. The victim testified she saw appellant riding his bicycle moments before the crime. During that time, she was able to view his face. Appellant even had time to say hello to her. Additionally, at the time of the crime, the victim saw appellant's face as well as his jacket as he was running towards her before he struck her. Accordingly, the victim had ample opportunity to view appellant.
 {¶ 19} Additionally, the victim's degree of attention was adequate. She paid particular attention to appellant while he was riding his bicycle because it was *Page 8 
unusual to see many people in the area that early in the morning. Additionally, she testified that she looked directly at his face as he was running towards her immediately before striking her.
 {¶ 20} Also, the victim's prior description of appellant was sufficiently accurate. The victim admitted to being shook up and hitting her head on the concrete minutes before first describing appellant to the 911 operator. Nevertheless, the victim later provided the police with a description of the assailant as an African-American male, 5'10'' tall, wearing a dark jacket with lettering on it and riding a bicycle. The police searched the area and discovered that appellant was the only individual matching the description shortly after the crime. Accordingly, the victim's description of the perpetrator was sufficiently accurate.
 {¶ 21} Furthermore, the victim testified that she was "absolutely sure" in her identification of appellant. Additionally, Officer Pruitt testified that after the "cold stand," the victim "100 percent positively identified" appellant as the perpetrator of the crime.
 {¶ 22} Finally, only a minimal amount of time, about 15-20 minutes, elapsed from the time of the crime until the victim positively identified appellant.
 {¶ 23} Under these circumstances, we find the "cold stand" identification reliable.
 {¶ 24} Moreover, we find that the outcome of the trial would not have been different absent the admission of the "cold stand" identification. In addition to the *Page 9 
identification, the state presented the testimony of Daryl Forest. He positively identified appellant in a photo array, as well as in open court, as the person who struck the victim. Further, police found appellant, matching the victim's description of her assailant, near the scene and minutes after the crime. Finally, the victim positively identified appellant as the assailant at the trial.
 {¶ 25} Finally, appellant complains that the record is silent as to whether the trial court considered any of the remaining "cold stand" factors enumerated in Neil v. Biggers, supra, other than the fifth factor. Appellant never objected to the cold stand identification at the trial court level. Therefore, the court was not required to address the "cold stand" factors because appellant never requested this of the court. Accordingly, we find appellant's first assignment of error without merit.
 {¶ 26} Appellant's second assignment of error states:
 {¶ 27} "Appellant was denied his right to effective assistance of counsel as guaranteed by Article 1, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the Constitution."
 {¶ 28} In order to demonstrate ineffective counsel, a defendant must show not only that his counsel's representation was deficient, but also that the deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052;State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the *Page 10 
defendant by the Sixth Amendment." Strickland, supra, at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, at paragraph two of the syllabus; see, also, Strickland, supra, at 687.
 {¶ 29} There is a strong presumption that a properly licensed trial counsel rendered adequate assistance. State v. Smith (1985),17 Ohio St.3d 98, 100, 477 N.E.2d 1128. As the Strickland Court stated, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689; see, also,State v. Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476.
 {¶ 30} In the instant matter, appellant argues that defense counsel was ineffective because he failed to challenge the "cold stand" identification of appellant. We find appellant's argument without merit.
 {¶ 31} The Sixth Amendment's guarantee of assistance of counsel does not require trial counsel to file a motion to suppress in every case.State v. Flors (1987), 38 Ohio App.3d 133, 528 N.E.2d 950, citingKimmelman v. Morrison (1986), 477 U.S. 365, 91 L.Ed.2d 305,106 S.Ct. 2574. The appellant bears the burden to direct the court to evidence in the record that supports suppression of the evidence. State *Page 11 v. Lytle (1976), 48 Ohio St. 2d 391, 358 N.E.2d 623, paragraph three of the syllabus. Moreover, counsel is not required to perform a futile act.State v. Martin (1983), 20 Ohio App.3d 172, 174, 485 N.E.2d 717;State v. Lodge, Greene App. No. 2004 CA 43, 2005-Ohio-1908; State v.Davis, Butler App. No. CA2001-05-108, 2002-Ohio-865.
 {¶ 32} As discussed in the first assignment of error, the "cold stand" identification of appellant was admissible. Accordingly, any filing of a motion to suppress by defense counsel would have been futile. Therefore, counsel was not ineffective for failing to challenge the identification. Furthermore, as previously determined, the outcome of the trial would not have been different had the victim's identification of appellant been suppressed. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 12 
ANN DYKE, JUDGE
 ANTHONY O. CALABRESE, JR., and CHRISTINE T. MCMONAGLE, J., CONCUR *Page 1