[Cite as *State v. Martemus*, 2018-Ohio-3277.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 106327

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### RAYLAND MARTEMUS

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-618173-A

**BEFORE:** Stewart, J., E.A. Gallagher, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 16, 2018

**ATTORNEY FOR APPELLANT**

Mary Catherine Corrigan
4403 St. Clair Avenue
Cleveland, OH 44103


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Carson Strang
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, J.:

**{¶1}** Following a bench trial, the court found defendant-appellant Rayland Martemus guilty of several crimes related to a home invasion that left a victim seriously injured. On appeal, Martemus raises two assignments of error. He claims ineffective assistance of counsel and challenges his convictions as being against the manifest weight of the evidence. We affirm.

**{¶2}** At trial, the victim testified that one evening his dog began barking unusually. The victim went to the common stairwell of the three-family home in which he lived to investigate the reason for the dog's barking. As he approached the landing just inside of the side door of the house, he saw the door open and a man armed with a pistol enter. The assailant pointed his gun at the victim and demanded his safe. The victim lunged at the man and a struggle ensued. A second assailant, armed with a crowbar, entered the house and joined the fray. The victim managed to throw the assailant with the gun down the stairs and into the basement before the other man struck him about the head and body with the crowbar. The victim, bleeding profusely, was able to escape up the stairs towards his living space, yelling for help.

**{¶3}** The victim's sister-in-law, who lived above the victim, testified that she heard the commotion and came downstairs. She witnessed the end of the altercation. She stated that she saw the man with the gun on the landing, attempting to flee. He pointed his gun at her, giving her a chance to see his face. She did not see the face of the assailant with the crowbar.

{¶4} The sister-in-law ran upstairs to call the police but her phone was not working. By the time she came back downstairs the assailants had fled. She ran across the street and called police from a neighbor's phone. When the police arrived at the house, they discovered a pair of in-ear headphones, or "earbuds." The earbuds were blood-stained and laying on the landing by the side door where the struggle ensued. The victim testified that he had never seen the earbuds before the altercation and that he uses hearing aids that prevent him from using those kind of earbuds. The sister-in-law also testified that she had not seen the earbuds before and had been on the landing previously that day. A forensic analysis of the earbuds revealed DNA profiles consistent with both the victim and Martemus. The analysis also revealed a minor profile that was insufficient for comparison.

{¶5} The victim was not able to describe either assailant to the police and he did not identify Martemus as a perpetrator during trial. The sister-in-law described the man with the gun to police as being a light-skinned male with a thin mustache, wearing a gray-hooded sweatshirt, baseball hat, and dark pants. At trial, she identified Martemus as that man.

{¶6} Martemus was convicted of three counts of aggravated burglary, one count of burglary, three counts of aggravated robbery, four counts of robbery, two counts of felonious assault, and one count of having weapons while under disability. Each of his convictions, aside from a robbery and his weapons while under disability convictions, contained notices of prior conviction and repeat violent offender specifications. The court also convicted Martemus of one- and three-year firearm specifications for two aggravated burglary counts, two aggravated robbery counts, three robbery counts, one felonious assault count, and the burglary count. After merger, Martemus's total sentence was ten years in prison.

## I. Ineffective Assistance of Counsel

{¶7} Martemus argues that he suffered ineffective assistance of counsel because trial counsel did not move to suppress the sister-in-law's in-court identification. He evaluates the in-court identification as if it were a "cold stand" identification,[1] but regardless, his claim lacks merit.

{¶8} To prove ineffective assistance of counsel, a defendant is required to show (1) counsel's representation was deficient, falling "below an objective standard of reasonableness," and (2) a reasonable probability that absent this deficient performance the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 671, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶9} During the sister-in-law's direct examination, she identified Martemus as the perpetrator with the gun. On cross-examination, when pressed about her identification, she stated she "got a good look at him because he pointed [the gun] in [her] face."

{¶10} Counsel attempted to discredit the sister-in-law, challenging what she remembered and her ability to remember it. He asked her about what the assailant was wearing — she confirmed it was a gray-hooded sweatshirt, dark pants, and a cap. He inquired whether the hood was up and if it obscured his face. He asked her too about what she remembered of the assailant's appearance — she confirmed he was a light-skinned male with a thin mustache.

{¶11} Counsel also called into question the sister-in-law's ability to observe the scene in light of her testimony that the assailant was pointing a gun at her. Counsel asked if she was focused on looking at the handgun pointed at her face and preoccupied with thoughts that she

---

[1] Martemus incorrectly refers to the in-court identification as a "cold stand" identification. A "cold stand" is a type of pretrial identification that occurs out of court. *See, e.g., State v. Patton*, 8th Dist. Cuyahoga No. 88119, 2007-Ohio-990, ¶ 9 (police apprehended defendant and immediately brought him to victim's house where she identified him as perpetrator). An in-court identification, on the other hand, is made during trial by a witness who is under oath and subject to cross-examination.

might be shot to the detriment of her ability to see the assailant's face. He asked her pointedly whether her identification was based on her memory of that night, or the fact that Martemus was the defendant at trial. After these challenges, the sister-in-law maintained that Martemus was the assailant: "[t]hat's the person I remember seeing in the hallway * * * [a]nd I remember his face, and I remember the gun being pointed at my face."

{¶12} Contrary to Martemus's assertion, this was not deficient performance. Counsel clearly attempted to discredit the sister-in-law's testimony. It was then up to the trial court to determine whether the identification was credible.

{¶13} Nevertheless, even assuming that counsel's performance was deficient, Martemus fails to establish the second aspect of an ineffective assistance of counsel claim: prejudice, the absence of which would have likely led to a different outcome. Martemus asserts that had counsel moved to suppress the identification, the court would have granted the motion, and Martemus would have likely been acquitted. We reject these claims. The trial court clearly indicated that it did not take issue with the sister-in-law's identification.

{¶14} Martemus challenged the identification in his Crim.R. 29 motion after the close of the state's case-in-chief and renewed the challenge after the close of his own case-in-chief. The court rejected the argument both times. Further, prior to trial Martemus moved for a continuance so that the sister-in-law could be shown a photo array because she did not previously identify him. The court denied the motion stating "[i]n every case witnesses come in and identify alleged or accused people * * * this is going to be great cross-examination material for you if they come in and identify [Martemus]." Counsel's attempts to challenge the identification were not deficient and Martemus fails to show prejudice. We overrule this assignment of error.

II. Manifest Weight of the Evidence

**{¶15}** Martemus argues that his convictions are against the manifest weight of the evidence because they rely solely on two pieces of evidence: the sister-in-law's testimony identifying him and the fact that his DNA was found on the earbuds at the crime scene. He claims that the evidence, independently or together, fails to demonstrate his guilt. We disagree.

**{¶16}** Challenge to the manifest weight of the evidence concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). Assessing a challenge to the manifest weight of the evidence requires the reviewing court to review the record, weigh the evidence and reasonable inferences drawn from it, and consider witness credibility. *Thompkins.* The court must determine whether, if in resolving conflicting evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice" that the court must reverse the conviction and order a new trial. *Id.,* quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, we recognize that "the weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶17}** In support of this assignment, Martemus attacks the credibility of the sister-in-law's identification. He challenges it as being unduly suggestive because Martemus was the only person in court that she could have identified as the assailant. He also challenges the identification as being unreliable in light of the fact that the victim, who was closer to the assailants, could not identify Martemus, and that the sister-in-law's description of the assailant as having a mustache was inconsistent with Martemus's claim that he has always worn a beard.

**{¶18}** The court was aware that the sister-in-law had made no prior identification when she testified that Martemus was the assailant. Moreover, she was cross-examined with regard to the reliability of her identification. Regarding the victim's inability to identify Martemus, the court heard testimony that the victim had consumed alcohol and prescription pain medication earlier that evening. He was also struck in the head with a crowbar and lost a significant amount of blood. The trial court apparently found that it was not surprising that he was unable to identify either assailant. Finally, as to any potential conflict between the sister-in-law's statement to police that the assailant had a thin mustache and Martemus's claim that he has always worn a beard, the sister-in-law was examined and cross-examined extensively on this point, and was adamant that Martemus was the assailant.

**{¶19}** Martemus does not challenge the DNA evidence on the earbuds and he concedes that he once owned the earbuds, but claims that he lost them at some point in time, and suggests that the assailant or someone else who had access to the landing, found them. Martemus supports this theory by noting that there was no other DNA evidence or latent fingerprints found in the home that linked him to the crime. Martemus's arguments do not create any conflict with the state's evidence, however.

**{¶20}** This is not the "'exceptional case in which the evidence weighs heavily'" against conviction and requires us to grant Martemus a new trial. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. We overrule this assignment of error.

**{¶21}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

EILEEN A. GALLAGHER, A.J., and
SEAN C. GALLAGHER, J., CONCUR