JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Travis Thomas appeals his conviction for robbery. He assigns seven errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm Thomas' conviction. The apposite facts follow.
 {¶ 3} Thomas was indicted on two counts of aggravated robbery and two counts of robbery. Defense counsel filed a motion to suppress the eyewitness identification. A hearing was conducted and the motion was denied. The matter then proceeded to trial.
 Jury Trial *Page 2 {¶ 4} On the evening of July 31, 2005, Timothy Hamilton and Kenneth Daugherty visited a friend in Shaker Heights. Hamilton parked his car at about 10:00 p.m. in the RTA parking lot located at the corner of Ashby and Van Aken Boulevard in Shaker Heights. When the men returned to the car around midnight, they observed someone sitting in the front passenger seat of the car. Hamilton yelled at the person. The man, later identified as Travis Thomas, stepped out of the car and faced the men. He had Hamilton's sweatshirt bundled up in his hands. After mumbling incoherently, he then said, "I'm going to pop you. I'm going to pop you."
 {¶ 5} Both Hamilton and Daugherty testified they thought that Thomas had a gun concealed in the sweatshirt and felt threatened. They immediately stepped away from Thomas. Thomas then walked towards Ashby. Daugherty called 911, and they followed Thomas from a distance to watch where he was going. They eventually flagged down a patrol car and pointed towards the suspect, who was now running.
 {¶ 6} Officer Norris chased the suspect, but eventually lost sight of him. The officer was unable to identify Thomas at trial because he could not see his face. Although the officer was unable to apprehend the suspect, he did recover the dropped red sweatshirt, two CD cases containing 65 CD's, and approximately six dollars in change. Hamilton identified these items as his and that they were in his car before the robbery. When the men returned to the car with the officer, they *Page 3 
discovered that the subwoofer speaker had been removed from the trunk and placed in the front seat.
 {¶ 7} Detective Carlozzi was monitoring the radio calls when Daugherty called. He met the victims at the scene of the crime where he showed them a photo array, which contained Thomas' picture. He separated the victims before showing them the array. Both men picked Thomas out of the photo array. Hamilton was 75 percent sure the man was the robber. Daugherty rated his level of certainty an eight on a scale of one to ten.
 {¶ 8} The night after the robbery, Detective Carlozzi patrolled the neighborhood looking for Thomas. He spotted Thomas at approximately 10:00 p.m. walking in the area of East 145th and Kinsman. The detective notified officers and requested back-up. When Thomas was arrested, his backpack was searched. Officers found wire-cutters, screwdrivers, scissors, other tool parts, and a pair of white gloves. After arresting Thomas, the detective photographed him.
 {¶ 9} The detective showed Thomas' booking photo to Hamilton two days later before the preliminary hearing. Hamilton was positive that the photo depicted the person who robbed him.
 {¶ 10} The trial granted defense counsel's motion for acquittal as to the aggravated robbery counts. The jury found Thomas guilty of robbing Timothy *Page 4 
Hamilton and not guilty of robbing Kenneth Daugherty. The trial court sentenced Thomas to four years in prison.
 Photo Array {¶ 11} In his first assigned error, Thomas contends the trial court erred by denying his motion to suppress the photo array and resulting identifications. We disagree.
 {¶ 12} Courts apply a two-prong test to determine the admissibility of challenged identification testimony. First, the defendant bears the burden of demonstrating that the identification procedure was unduly suggestive. To meet this burden, the defendant must show that the procedure was unduly suggestive and resulted in an unreliable identification. Unreliable means that the suggestive procedure is capable of resulting in an irreparable mistaken identity.[2]
 {¶ 13} Thomas contends the identification procedure was unnecessarily suggestive because the array consisted of only five pictures when there were six slots available on the array card. The fact only five versus six photographs were used did not make the photo array suggestive. The detective explained a sixth photograph was not used because he could not locate a sixth one that depicted the similar characteristics of the described suspect. *Page 5 
 {¶ 14} Thomas also argues the other photographs depicted lighter-skinned African-Amercian males and some had their eyes closed. "A defendant in a lineup need not be surrounded by people nearly identical in appearance."[3] Furthermore, the other photographs are all reasonably close to Thomas' photo in appearance, showing no significant variations in hair length, complexion, age, features, or dress. Therefore, the array was not unduly suggestive.
 {¶ 15} Thomas also argues that the photo array was suggestive because Detective Carlozzi assembled the array prior to receiving the victims' physical description of the suspect. However, this court in State v.Jones[4] held "when a photo array is created by police prior to the victim giving a description of the suspect, the array is not unreasonably suggestive, as long as the array contains individuals with features similar to the suspect."[5] In the instant case, the men in the other photographs had features similar to Thomas. More importantly, the detective did receive information regarding the suspect's identification over the radio. He stated that the description of the "red beanie-type hat" along with the physical description *Page 6 
prompted him to think of Thomas, with whom he was familiar and whom he observed at the scene of the crime two days earlier.
 {¶ 16} However, although the victims picked Thomas out of the photo array, neither was one hundred-percent sure it was him. The detective stated the photograph of Thomas he used in the array was a few years old and depicted him with a fuller beard. In order to determine if Thomas was in fact the robber, the detective showed Hamilton Thomas' booking photo, which was taken after his arrest. This was two days after the robbery. Hamilton stated he was positive the man depicted in the booking photo was the robber. Thomas argues the detective's showing the victim the booking photograph was unduly suggestive.
 {¶ 17} We conclude the booking photo was akin to a "cold-stand" identification. In State v. Madison,[6] the Supreme Court of Ohio explained: "There is no prohibition against a viewing of a suspect alone in what is called a `one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy." In Neil v. Biggers,[7] the Supreme Court of the United States held: *Page 7 
 {¶ 18} "The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."[8]
 {¶ 19} In the instant case, Hamilton and Daugherty observed Thomas from about ten feet away; Thomas faced them and walked towards them as he escaped. The victims provided an accurate prior description of Thomas as an African-American male, approximately 6' or 6'1" tall, with an unshaven face, and a "red-beanie" hat. Although Thomas was not wearing the red-beanie hat upon arrest, Detective Carlozzi was familiar with the fact that he wore such a hat. The victims also stated the area of the robbery was well lit. The booking photo was presented to Hamilton two days after the incident, which is within a relatively short period of time. Hamilton was positive the booking photo depicted the person who robbed him. Based on these factors, we cannot conclude the identification was unreliable.
 {¶ 20} Additionally, both Hamilton and Daugherty identified Thomas in court as the robber. Even if the pretrial identification procedure was impermissibly suggestive, an in-court identification is permissible if the state establishes by clear and *Page 8 
convincing evidence that the witness had a reliable, independent basis for the identification based on prior independent observations made at the scene of the crime.[9] An in-court identification is subject to the same scrutiny as a pretrial identification. Hamilton's and Thomas' pretrial identification satisfied the Neil v. Biggers test; therefore, the trial court did not err by allowing the in-court identifications. Accordingly, Thomas' first assigned error is overruled.
 Other Act Evidence {¶ 21} In his second assigned error, Thomas argues Detective Carlozzi's trial testimony violated Evid.R. 404(B). Specifically, he contends the detective's testimony regarding the fact he observed Thomas at the RTA stop two days before the robbery, and that Thomas walked in the same direction as he did after committing the robbery, violated Evid.R. 404(B). We disagree.
 {¶ 22} We initially note that counsel failed to object to the testimony; therefore, absent objection, any error is deemed to have been waived unless it constitutes plain error. Plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions.[10] Notice of plain error is to be taken with utmost caution, under exceptional *Page 9 
circumstances, and only to prevent a manifest miscarriage of justice.[11] We conclude plain error did not occur.
 {¶ 23} Evid.R. 404(B) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 24} Detective Carlozzi's testimony did not concern a prior crime, but concerned acts committed by Thomas that were consistent with a person casing the scene, which constitutes an "other act" under Evid.R. 404(B).
 {¶ 25} The detective's testimony revealed that Thomas was familiar with the RTA stop and that he knew the route to use to get away afterwards. This testimony was not used to prove Thomas' propensity to commit the crime. It showed Thomas' knowledge of the area, which is specifically permissible under Evid.R. 404(B). Accordingly, Thomas' second assigned error is overruled.
 Jury Instruction {¶ 26} In his fourth assigned error, Thomas argues the trial court committed plain error by not instructing the jury regarding the lesser included offense of theft *Page 10 
because there was no evidence that Thomas had a gun or that the victims were fearful. We disagree.
 {¶ 27} The record indicates Thomas failed to object to the jury instruction. His "failure to object to [the] jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise."[12] We conclude the trial court's failure to instruct on theft did not constitute plain error.
 {¶ 28} Although theft is a lesser included offense of robbery,[13] a charge on a "lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."[14]
 {¶ 29} Thomas was convicted of robbery, in violation of R.C.2911.02(A)(2), which provides that "no person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * inflict, attempt to inflict, or threaten to inflict physical harm on another." R.C. 2913.02(A)(4), which defines theft by threat, provides that "no person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services *Page 11 
* * * by threat." The only distinguishing feature between these two offenses is that robbery requires a threat of "physical" harm.[15]
 {¶ 30} Therefore, to establish that the trial court should have provided a jury instruction for the lesser offense, Thomas must demonstrate that a reasonable jury could not have found that he threatened to inflict physical harm on Thomas while he committed the offense.
 {¶ 31} The uncontroverted evidence indicates that Thomas threatened the victims by stating, "I am going to pop you." This threat provides a sufficient basis for the jury to find that Thomas threatened to inflict physical harm.[16]
 {¶ 32} In addition, Thomas' hands were concealed in the bundled sweatshirt he was carrying; the victims believed he could have been concealing a gun. The victims testified to feeling threatened and scared he was going to shoot them, and, in fact, stopped approaching him and stepped backwards. Although they followed him as he escaped, they did so at a safe distance, and only followed so that they could inform officers where he went. Under these facts, we conclude a reasonable jury would not acquit Thomas of robbery. Therefore, the trial court did not err by failing to instruct the jury as to theft. Accordingly, Thomas' fourth assigned error is overruled. *Page 12 
 Ineffective Assistance of Counsel {¶ 33} We will address Thomas' third and fifth assigned errors, together as they both concern Thomas' argument that his counsel was ineffective. Thomas argues his counsel was ineffective for not objecting to the other act evidence and for not requesting an instruction on the lesser included offense of theft.
 {¶ 34} We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington.[17] UnderStrickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[18] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[19] Judicial scrutiny of a lawyer's performance must be highly deferential.[20]
 {¶ 35} We addressed these issues already and have determined counsel's failure to object to the alleged other act testimony or request the instruction did not result in prejudicial error. Therefore, Thomas has not shown but for his attorney's *Page 13 
error, the result of the proceedings would have been different. Accordingly, Thomas' third and fifth assigned errors are overruled.
 Insufficient Evidence/Manifest Weight of the Evidence {¶ 36} In his sixth and seventh assigned errors, Thomas argues that his robbery conviction was not supported by sufficient evidence and was against the manifest weight. We disagree.
 {¶ 37} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman:[21]
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[22]
 {¶ 38} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[23] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, *Page 14 
would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 39} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held in State v. Thompkins:[24]
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks, supra, at 1594.
 "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury *Page 15 
clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 40} Thomas contends the state failed to prove he threatened to inflict physical harm because his statement that he was "going to pop" the victims, without showing a gun, did not constitute a threat of physical harm.
 {¶ 41} We concluded in Thomas' fourth assigned error that his statement to the victims, "I am going to pop you," while concealing his hands in the sweatshirt, constituted sufficient evidence of an immediate threat of harm. In fact, the victims testified that they believed his statement meant he had a gun, and they felt afraid and threatened. Therefore, there was sufficient evidence presented of a threat of physical harm.
 {¶ 42} Thomas also argues that the victims' identification was unreliable. We concluded in Thomas' first assigned error that the photo array was not suggestive and that the victims' identification of Thomas was reliable. Accordingly, Thomas' sixth and seventh assigned errors are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed. *Page 16 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and MELODY J. STEWART, J., CONCUR
 Appendix "I. The trial court erred when it overruled appellant's motion tosuppress the photo array and resulting identification."
 "II. Plain error occurred with the admission of other acts testimonyin violation of appellant's rights under Article I, Section 16 of theOhio Constitution and the Fourteenth Amendment to the United StatesConstitution.
 "III. Appellant was denied his right to effective assistance ofcounsel guaranteed by Article I, Section 10 of the Ohio Constitution andthe Sixth and Fourteenth Amendment to the United States Constitutionwhen his attorney failed to object to inadmissible other actstestimony." *Page 17 
 "IV. Plain error occurred when the trial court failed to provide ajury instruction which included an instruction on the lesser includedoffense of theft."
 "V. Appellant was denied his right to effective assistance of counselguaranteed by Article I, Section 10 of the Ohio Constitution and theSixth and Fourteenth Amendment to the United States Constitution whenhis attorney failed to request a jury instruction for a lesser includedoffense."
 "VI. The evidence was insufficient as a matter of law to support afinding beyond a reasonable doubt that appellant was guilty ofrobbery."
[1] See Appendix.
[2] Simmons v. United States (1968), 390 U.S. 377, 384,19 L.Ed.2d 1247, 88 S.Ct. 967; State v. Page, Cuyahoga App. No. 84341,2005-Ohio-1493; State v. Glover, Cuyahoga App. No. 88317,2007-Ohio-2122.
[3] State v. Davis (1996), 76 Ohio St.3d 107. See, also, State v.Murphy, 91 Ohio St. 3d 516, 2001-Ohio-112; State v. Green (1990),67 Ohio App.3d 72 at 79, citing Simmons v. United States (1968),390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed. 2d.
[4] Cuyahoga App. No. 85025, 2005-Ohio-2630 at ¶ 15.
[5] Id. at ¶ 15.
[6] (1980), 64 Ohio St.2d 322, 332.
[7] (1972), 409 U.S. 188, 34 L.Ed. 2d 401.
[8] Id. at 199-200. See, also, State v. Waddy (1992),63 Ohio St.3d 424 at 439.
[9] State v. Jackson (1971), 26 Ohio St.2d 74, syllabus; State v.Tate, Cuyahoga App. 81577, 2003-Ohio-1835.
[10] State v. Waddell (1996), 75 Ohio St.3d 163, 166,1996-Ohio-100.
[11] State v. Phillips (1995), 74 Ohio St.3d 72, 83,1995-Ohio-171.
[12] State v. Twyford, 94 Ohio St.3d 340, 350, 2002-Ohio-894.
[13] State v. Davis (1983), 6 Ohio St.3d 91, 95.
[14] State v. Thomas, 40 Ohio St.3d 213, paragraph two of the syllabus; State v. Kidder (1987), 32 Ohio St.3d 279.
[15] State v. Walton, 9th Dist. No. 3206-M, 2002-Ohio-1999; State v. Wood, 4th Dist. No. 01CA2779, 2002-Ohio-412.
[16] See, e.g., State v. Wood, 4th Dist. No. 01CA2779, 2002-Ohio-412; State v. Brooks (Mar. 7, 2001), 9th Dist. No. 20125; State v. Gales (Nov. 22, 2000), 9th Dist. No. 00CA007541; State v. Brooks (Sept. 24, 1999), 2nd Dist. No. 17606.
[17] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[18] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[19] Id. at paragraph two of syllabus.
[20] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[21] (1978), 55 Ohio St.2d 261, syllabus.
[22] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[23] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[24] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52. *Page 1