JOURNAL ENTRY AND OPINION *Page 2 
{para; 1} Defendant Jeffrey Rox (appellant) appeals his aggravated robbery and having a weapon while under disability convictions. After reviewing the facts of the case and pertinent law, we affirm.
 I. {para; 2} In the early morning of September 17, 2006, Dennis Goeden (Goeden) was robbed at gunpoint in front of 2100 Lakeside Avenue, which is a homeless shelter in downtown Cleveland. Goeden had been at a party on the night of September 16, 2006, and was walking by the shelter when he encountered a group of *Page 3 
men. According to Goeden, the men asked him if he wanted to buy drugs. Suddenly one of the men pointed a gun at him and took $28 from his pants pocket. Goeden flagged down the police and told them what happened. He described the assailant as a heavyset black male in a red shirt. The officers looked at the group of men standing in front of the shelter and noticed two individuals wearing red shirts. The police shined their lights on the group, and Goeden pointed to one man in particular, who ran around the side of the building into an alley. Goeden identified that man as the one who robbed him. The officers proceeded with caution around the building and discovered that the alley dead-ended into a fenced-in area. The officers squeezed through the fence and began searching with flashlights in a densely weeded area. After approximately twenty to twenty-five minutes, a police broadcast indicated that officers had apprehended a black male in a red t-shirt on East 22nd Street, one block from the scene. This male was appellant.
{para; 3} The police put appellant in a squad car and drove him to the scene of the crime, where a cold-stand identification was conducted. A cold stand is when, shortly after an offense is committed, the victim is shown only one person and asked to identify whether that person was the perpetrator of the crime in question. In the instant case, Goeden identified appellant as the man who robbed him. Subsequent to the identification, a police officer found a .22 caliber handgun on the ground alongside the building in the alley where appellant ran.
{para; 4} On September 28, 2006, appellant was indicted for aggravated robbery with one-and three-year firearm specifications, carrying a concealed weapon, and *Page 4 
having a weapon while under disability. On December 11, 2006, a jury trial began on counts one and two. Count three, having a weapon while under disability, was tried to the court. The court granted appellant's motion for acquittal on the carrying a concealed weapon charge. Appellant was found guilty of the other two offenses, including the three-year firearm specification, and the court sentenced him to four years for aggravated robbery and one year for having a weapon while under disability, to run concurrently. The court also sentenced appellant to three years for the firearm specification, to run consecutively to the four-year term, for an aggregate prison term of seven years.
 II. {para; 5} In his first assignment of error, appellant argues that his "right to due process of law was violated because the admission of the identification evidence at trial constituted plain error." Specifically, appellant argues that Goeden's identification of him in a cold stand, or one-on-one show up, was unreliable.
{para; 6} We first note that appellant did not object to the identification procedure at trial; therefore, any error is deemed waived unless it constitutes plain error. See State v. Thomas, Cuyahoga App. No. 88548, 2007-Ohio-3522. The Ohio Supreme Court has held that "under the plain-error analysis * * * and, in order to warrant a reversal of the convictions, [a party] must establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions." State v. Waddell (1996), 75 Ohio St.3d 163, 166. See, also, State v. Phillips (1995), *Page 5 74 Ohio St.3d 72, 83 (holding that "[n]otice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice").
{para; 7} In reviewing whether an eyewitness identification should have been suppressed, we must first determine whether the identification was tainted by "unnecessarily suggestive" pretrial identification procedures. If the procedures were suggestive, the reliability of the identification becomes the "linchpin" in determining the admissibility of the evidence. See State v. Brown, Cuyahoga App. No. 86544,2006-Ohio-2573; Neil v. Biggers (1972), 409 U.S. 188. Additionally, when ruling on the suppression of a cold-stand identification, the court must consider the following factors: "1. The opportunity of the witness to view the criminal at the time of the crime; 2. The witness' degree of attention; 3. The accuracy of the witness' prior description of the criminal; 4. The level of certainty demonstrated by the witness; 5. The length of time between the crime and the confrontation." State v.Thompson, Cuyahoga App. No. 79938, 2002-Ohio-2390.
{para; 8} In the instant case, the following evidence was presented at trial in conjunction with Goeden's cold-stand identification of appellant:
{para; 9} Witness' opportunity to view — Goeden and the arresting police officer testified that the area of the crime was "semi-lit" or "well lit." Furthermore, the assailant was facing Goeden when he put a gun approximately four inches from Goeden's face. The two had a brief exchange of words as the offender reached into Goeden's pants pockets to remove cash. *Page 6 
 {para; 10} Witness' degree of attention — Goeden testified that he "[k]ind of froze" and put his arms up when the gun was pointed at his head. Additionally, he stated that he was able to identify the person who robbed him from their encounter. Cleveland police officer Brian Moore testified as follows:
 "Once [Goeden] jumped out in front of us, he said he was just robbed, that a male stuck a gun in his face and basically took money from him. He said he was standing right over there. There was a crowd of people standing right on the sidewalk. So we asked him which one, and he said it was the male in the red shirt. So then again we turned around and asked him which one, because there [were] two males in red shirts, and he told us that, you know, it was the heavyset male, pointed him out. As soon as he pointed him out, that male walked in between the buildings."
 {para; 11} Witness' accuracy of description — Goeden testified that the man who robbed him was a six-foot-tall African American, had a stocky build, and was wearing a red t-shirt at the time of the crime. He also testified that there were differences between the two men wearing red shirts at the scene, such as the other man was thinner and his shirt sleeves were longer. When police arrested appellant, who is a heavyset black male and approximately six feet tall, he was wearing a red t-shirt.
{para; 12} Witness' level of certainty — Cleveland police officer Joseph Hageman, who conducted the cold stand in the instant case, testified that he asked Goeden a few times if appellant was the man who robbed him, and Goeden replied, "I'm absolutely positive this is — this is the male that robbed me." Goeden testified that he was able to positively identify the person who robbed him, and when asked specifically if he was sure it was appellant, Goeden replied, "99 percent, yes." *Page 7 
 {para; 13} Length of time passed — testimony from Goeden, various police officers, and appellant puts the length of time between the crime and the identification at approximately 30 minutes.
{para; 14} We find the following: Goeden's description of appellant was accurate; Goeden had an opportunity to view the suspect and pay attention to what was happening; he was certain of his identification; and a short amount of time passed between the offense and the cold stand. These factors do not amount to a substantial likelihood of misidentification. In addition, under the totality of the circumstances, Goeden's identification of appellant as the assailant was not unduly suggestive. See State v. Patton, Cuyahoga App. No. 88119, 2007-Ohio-990
(holding that a cold-stand identification was supported by evidence showing that the victim had ample opportunity to view the defendant during the crime; her degree of attention was adequate; her description of "an African-American male, 5'10" tall, wearing a dark jacket with lettering on it and riding a bicycle" was accurate; she was "absolutely sure" in her identification; and fifteen to twenty minutes elapsing from the time of the crime until the identification was "minimal").
{para; 15} Accordingly, we find that the court did not commit plain error in admitting the cold-stand identification into evidence, and appellant's first assignment of error is overruled.
 III. {para; 16} In his second assignment of error, appellant argues that his "constitutional right to due process of law was violated by the state's bad faith *Page 8 
destruction of unique evidence that was potentially useful and had a reasonable probability of exculpating appellant." Specifically, appellant argues the state violated policy by test firing the gun recovered in the alley before processing it for fingerprints, thus intentionally destroying potentially useful evidence.
{para; 17} In analyzing failure to preserve or destruction of evidence against a criminal defendant, a clear distinction is drawn between materially exculpatory and potentially useful evidence. See Brady v.Maryland (1963), 373 U.S. 83; Arizona v. Youngblood (1988), 488 U.S. 51. If the evidence is material, a due process violation occurs regardless of whether the prosecution acted in good or bad faith. State v.Johnston (1988), 39 Ohio St.3d 48. Evidence is deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 61 (quoting United States v.Bagley (1984), 473 U.S. 667, 682).
{para; 18} On the other hand, "failure to preserve potentially useful evidence does not constitute a denial of due process of law, nor should it lead to a presumption of suggestiveness." State v. Keith (1997),79 Ohio St.3d 514, 523. Potentially useful evidence includes evidence thatmay have exonerated the defendant. See State v. Geeslin, Slip Copy, Ohio S.Ct. No. 2006-0882, 2007-Ohio-5239. "If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." Id. Bad faith requires "a dishonest purpose, moral obliquity, conscious *Page 9 
wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." Hoskins v. Aetna Life Ins. Co. (1983),6 Ohio St.3d 272, 276.
{para; 19} In the instant case, fingerprints recovered from the gun found in the alley after the crime was committed amount to potentially useful evidence, as the prints had a possibility of either helping or hurting appellant in the defense of his case. Cleveland police officer Nathan Willson, who is a firearms examiner in the scientific investigations unit, testified that he was ordered by the Grand Jury to test fire the gun in question immediately for operability. Willson performed this test fire before any prints were taken from the gun. He testified that test firing will destroy fingerprints found on a gun, and that in this case, no prints were taken from the gun. Willson also testified about the following two procedures regarding firearms: 1) "Under certain Ohio statutes, the firearm has to be operable for certain charges to be presented, or to add what they call a gun specification to certain cases. So we often test fire firearms to determine operability — excuse me — or if it works."; and 2) "[C]ity policy is that we will not test fire firearms before fingerprinting, because the firing process can destroy any fingerprint evidence, as it's a very delicate form of evidence."
{para; 20} To sum up this evidence, a police officer was ordered to violate departmental policy regarding evidence from the firearm used in the robbery. Appellant was charged with a one-and three-year firearm specification, which require a gun to be operable. See R.C.2923.11(B)(1) (defining "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an *Page 10 
explosive or combustible propellant * * *"). However, the crux of appellant's argument is that this is a case of mistaken identity, and absent fingerprints from the gun, the only evidence the state presented that linked him to the crime was Goeden's eyewitness identification.
{para; 21} The record is void of any evidence that this break in procedure involved bad faith. Officer Hageman testified that after he found the gun in the alley, he put it in an evidence bag, identified it and marked it "to be printed," and that this is standard procedure. Additionally, after Officer Willson testified that "it's my understanding that the detective was threatened with being held in contempt by the Grand Jury if he didn't follow the directive," defense counsel requested that this statement be stricken from the record, which the court denied. Although it is unclear why this break in procedure occurred, it is also equally unclear that it involved bad faith, without more specific evidence. We are bound to follow the directive inKeith, supra, stating that failure to preserve potentially useful evidence should not "lead to a presumption of suggestiveness." Appellant's second assignment of error is without merit.
 IV. {para; 22} In his third assignment of error, appellant argues that his "constitutional right to due process was violated when the state improperly referred to prior convictions and argued the jury should convict appellant based upon his bad character, other acts, and propensity to commit the instant offense." Specifically, appellant argues that in closing arguments, the state characterized him as a career *Page 11 
criminal, thief, and con man, which amounts to an improper "comment on the character and propensity of the defendant to have committed this offense."
{para; 23} The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper, and, if so, whether they prejudicially affected substantial rights of the defendant. State v.Smith (1984), 14 Ohio St.3d 13, 14. Furthermore, pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In State v. Curry (1975), 43 Ohio St.2d 66, 68, the Ohio Supreme Court held the following:
 "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit the crime. Although such evidence may, in some cases, logically tend to establish that a criminal defendant committed the act for which he stands accused, the evidence is considered legally irrelevant for the reasons enumerated in Whitty v. State (1967), 34 Wis.2d 278, 292, 149 N.W.2d 557: `* * * (1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the confusion of issues which might result from bringing in evidence of other crimes.'" (Internal citations omitted.)
 {para; 24} There are, however, exceptions to this rule. First, under Evid.R. 609(A)(2), prior convictions of crimes punishable by a year or more in prison are admissible "if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *Page 12 
Second, evidence of other bad acts is admissible when the defense "opens the door" to this evidence by introducing it. State v. Clemence, Cuyahoga App. No. 81845, 2003-Ohio-3660.
{para; 25} In the instant case, appellant argues that the following comments made during the state's closing arguments were improper and prejudicial:
 "We also know that Jeffrey Rox has a criminal record. We know that he has a ten-year record of committing crimes. He's a career criminal. * * * Well, we also know from what he was convicted of, and if you recall, there were two convictions for selling counterfeit drugs. Okay? So we also know he has no problem conning people. We know he has no problem taking money from people that he has no right to do."
 {para; 26} Applying the law to the facts of the case at hand, we find that the state's comments fall under both exceptions noted above. Appellant testified in his own defense and established that he was convicted of various drug and theft related felonies in seven criminal cases over the past ten years. By doing so, appellant opened the door to his criminal record, which consisted of felony convictions. Additionally, appellant admitted to serving time in prison, although he had never been to trial before because all of his prior convictions resulted from guilty pleas. We find these facts analogous to the Sixth District Court of Appeals of Ohio's holding in State v. Amyx (1988), 55 Ohio App.3d 54, 58:
 "It was appropriate trial strategy for defense counsel to communicate the appellant's criminal record to the jury rather than to leave the matter to be elicited from the appellant during cross-examination by the assistant prosecuting attorney. Additionally, we do not find that the assistant prosecutor's closing argument went beyond the acceptable in his reference to those matters. He told the jury they could consider the *Page 13 appellant's criminal record for purposes of assessing his credibility, and the court appropriately instructed the jury concerning those matters."
 {para; 27} Given this, we find no evidence of prosecutorial misconduct, and appellant's third assignment of error is overruled.
 V. {para; 28} In his fourth assignment of error, appellant argues that "the trial court abused its discretion when it excluded defense exhibits `A' and `B' and deprived the appellant of his right to a full defense, in violation of appellant's constitutional right to due process of law." Specifically, appellant argues that the court erred by not admitting into evidence two photographs of a man named Wesley Long (Long), whom appellant identified as being the man who robbed Goeden.
{para; 29} Trial courts have broad discretion in the admission of evidence, and we review rulings of such decisions under an abuse of discretion standard. State v. Meyers, 97 Ohio St.3d 335, 2002-Ohio-6658. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
{para; 30} In the instant case, appellant presented two photographs of Long to various witnesses throughout the trial. Neither Officer Hageman nor Goeden could identify the man in the photographs. Troy Cloud, the night shift supervisor at the 2100 Lakeside Avenue homeless shelter, testified that he recognized the man in the photographs as having stayed at the shelter, but he could not identify him. Appellant *Page 14 
testified that he knew the man in the photographs as "Wes," that Long was wearing a red hooded sweatshirt on the night in question, and that Long was the man who robbed Goeden.
{para; 31} In opposing the pictures' admission into evidence, the state argued that the "best evidence" rule applied, meaning that rather than introducing a photograph of Long, the best evidence would be Long himself. The state also argued that the photos were two years old, and it could not be established that Long looked the same at the time the offense was committed. Ultimately, the court denied the exhibits as untimely because appellant did not present them to the state in discovery; rather, they were given to the state on the morning of the first trial day, and the state did not have adequate time to prepare.
{para; 32} Appellant argues that the "photographs were the very foundation of the defense." This assertion, however, is unsupported by both case law and the record. Appellant's argument of mistaken identity could be bolstered by evidence showing that he looked similar to, and was mistaken for, the real perpetrator. However, while appellant claimed that he did not commit the crime throughout the proceedings, he did not identify who he thought robbed Goeden at gunpoint that evening until immediately before trial. Furthermore, the only link Long had to the scene of the crime was appellant's testimony. He did not identify any other witnesses, including Long himself, who put Long at 2100 Lakeside Avenue that night. The mere fact that appellant looks like someone in a picture is not enough to show his identity was *Page 15 
mistaken, and the court did not abuse its discretion by excluding these photographs from the jury's view.
{para; 33} Appellant's fourth assignment of error is overruled.
 VI. {para; 34} In his fifth assignment of error, appellant argues that he "was deprived of his constitutional right to effective assistance of counsel, in that counsel failed to move for suppression and a mistrial based upon the unreliable out-of-court identification of appellant, the intentional destruction of fingerprint evidence, and his failure to adequately comply with the rules of discovery."
{para; 35} To substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v.Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144. In State v. Bradley, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove the second prong of prejudicial effect. State v. Bradley (1989), 42 Ohio St.3d 136. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 142.
{para; 36} Appellant's allegations of ineffective assistance of counsel correspond with assignments of error one, two, and four. First, counsel's failure to object to the cold-stand identification does not pass the second prong of Strickland. We held, *Page 16 
supra, that the cold stand was untainted and reliable; thus, had counsel objected to the identification, the result would have been no different. See State v. Lipkins (Oct. 30, 1995), Stark App. No. 1995CA00112 (holding that the defendant's ineffective assistance of counsel claim failed because "[e]ven if defense counsel had successfully objected to Officer Elliot's testimony, we have already found, supra, the photographic identification procedure at issue was not unduly suggestive").
{para; 37} Second, counsel's failure to suppress the firearm evidence or failure to seek a mistrial also does not meet the Strickland
requirements. Because the fingerprint evidence would have been potentially useful, rather than materially exculpatory, we cannot say that the prints would have changed the outcome of the trial. In addition, the record contains no evidence of bad faith on the state's part.
{para; 38} Appellant's third allegation of ineffective assistance of counsel regarding the exclusion of the photographs is not well taken. Defense counsel vehemently argued in the trial court to have the exhibits introduced into evidence. Counsel also presented the photographs to witnesses on the stand to attempt to make some connection between Long and the robbery. Although unsuccessful, this cannot be seen as a flawed or deficient performance.
{para; 39} Appellant's fifth assignment of error is overruled.
 VII. {para; 40} In his sixth and final assignment of error, appellant argues that "the cumulative effect of all the errors denied appellant a fair trial in violation of his constitutional right to due process of law." Specifically, appellant argues that "there is *Page 17 
no overwhelming evidence of guilt," and the multiple errors committed require reversal.
{para; 41} Under the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner (1995),74 Ohio St.3d 49, 64. See, also, State v. DeMarco (1987), 31 Ohio St.3d 191. To apply this doctrine, we must first find multiple instances of harmless error.
{para; 42} In the instant case, after a careful review of the record, we found no error in the trial court. Therefore, appellant fails to meet the threshold requirement of the cumulative error doctrine, i.e., that any error occurred at all. Succinctly put, Goeden's cold stand and in-court identifications of appellant as the man who robbed him at gunpoint deflate appellant's unsubstantiated mistaken identity defense. The identification procedure withstood this court's review, and no errors, harmless or otherwise, were found. Appellant's final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 18 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and PATRICIA ANN BLACKMON, J., CONCUR. *Page 1