[Cite as *State v. Thompson*, 2012-Ohio-921.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96929**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHRISTOPHER THOMPSON

DEFENDANT-APPELLANT

### JUDGMENT:
### AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-540967

**BEFORE:**   Jones, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**   March 8, 2012

**ATTORNEY FOR APPELLANT**

John T. Castele
614 West Superior Avenue
Suite 1310
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Erica Barnhill
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Christopher Thompson, appeals his convictions for felonious assault and having a weapon while under disability. We affirm.

Procedural History and Facts

{¶2} In 2010, Thompson was charged with two counts of felonious assault with one- and three-year firearm specifications and one count of having a weapon while under disability. The matter proceeded to a jury trial, at which the following pertinent evidence was presented.

{¶3} On August 3, 2010, Cleveland police officers responded to East 135th Street and Byron Avenue for a report of a male shot. EMS transported the male, Donald Davis, to the hospital. He had been shot in the leg. Officers tried to interview Davis at the hospital, but Davis would not answer their questions.

{¶4} The next day, Detective Gerald Sowul went to the hospital to interview Davis. Davis described the man who shot him and told the detective the shooter's name was "Chris Thomas." Detective Sowul, who was familiar with Thompson, believed "Chris Thomas" to be Thompson.

{¶5} Detective Sowul generated a photo array and returned to the hospital the next day. A MetroHealth Hospital police officer testified that he presented the photo array to Davis, who "immediately" identified Thompson as the shooter. The officer testified that Davis was "quite adamant that was the male that shot him."

{¶6} Thompson was arrested in December 2010. He was placed in county jail

and immediately began to make phone calls from the jail to his girlfriend, Risha Lumbus.

{¶7} Sergeant Phil Christopher of the Cuyahoga County Sheriff's Office testified that he and sheriff's office employee Maureen Anthony downloaded the recorded calls. Sergeant Christopher testified that each jail inmate is given an identification number and that number, along with the last four digits of an inmate's social security number, must be inputted when an inmate makes a phone call. During trial, the prosecutor played numerous recorded jailhouse phone calls made from Thompson's inmate number. During these phone calls, Thompson told various people to make sure Davis did not show up for trial. In a December 22, 2010 phone call Thompson told Lumbus,

> [m]an, you all gotta put some pressure on dude. Dude gonna have to disappear. * * * He can't show up in court. * * * You gotta make dude understand. They gonna be looking for him. If they end up catching up with him, he need to tell them that ain' the guy that did it. He look like him, but that ain't the dude that did it.

{¶8} Sergeant Christopher testified that he also recovered phone calls Thompson made to Lumbus using another inmate's identification number. During these calls, Thompson told Lumbus and another man, "Black," to tell Davis to stay "out of the way," but if Davis was forced to testify "to stick to his story and come up with why he said that I'm the one who did it and why he changing his statement." During one call, Thompson had Lumbus call his attorney and the attorney advised Thompson not to try to get Davis to miss court and told him his jailhouse phone calls were being recorded. At this point in the recorded conversation, Thompson admitted he was on another inmate's account.

{¶9} Davis failed to appear for the first scheduled trial date and was arrested on a warrant. The police tried to speak with him about the shooting, but he would not answer their questions.

{¶10} Davis appeared for the second scheduled trial date. He testified that, on August 3, 2010, he was riding in the backseat of a car with a man named "Corday." Corday and his cousin, "Dean," were also sitting in the back seat. Davis and Corday began to argue about "old stuff from back in the day." Davis got out of the car, yelling. He began to walk away but was shot in the leg. According to Davis, "[t]here was a car full of people, I don't know who shot me."

{¶11} Davis testified that he identified Thompson as the shooter because a friend had told him that Thompson shot him. He also testified that shortly before trial was to commence, he told Detective Sowul that he did not know who shot him. When the prosecutor asked Davis why he changed his story, he testified that he identified Thompson because his friend gave him that name and he could not be expected to remember what happened the day of the shooting "piece by piece." Davis further denied being warned not to come to court or offered money to change his story. Davis admitted he did not want to testify against Thompson and that the prosecutor "had to do a little bit of work" to get him to appear for trial. He also admitted to identifying Thompson in the photo array, circling his picture and writing "[t]his is the guy who shot me" next to the photo, and signing and dating his identification of Thompson.

{¶12} On cross-examination, Davis testified that he was "not sure" that it was

Thompson who shot him and he did not know who shot him.   On redirect examination, Davis admitted Thompson was one of the passengers in the car, but reiterated that he did not know who shot him.

{¶13} Lumbus testified that Thompson called her while he was in jail and they discussed the case.   She also identified Thompson's and her voice in some of the recorded phone conversations.

{¶14} Thompson was convicted of all charges.   The trial court sentenced him to a total of ten years in prison.

{¶15} Thompson appeals, raising the following assignments of error for our review:

> I.   The defendant was denied a fair trial in that the pretrial identification testimony ought to have been suppressed.
>
> II. The trial court erred in allowing recorded telephone conversations into evidence without the recordings being properly authenticated.
> III.   The defendant was denied effective assistance of counsel.

## Photo Array

{¶16} In the first assignment of error, Thompson argues that the pretrial identification process was tainted.[1]

{¶17} The identification of a defendant derived from unnecessarily suggestive procedures, which have a likelihood of leading to a misidentification, violates a

---

[1]Within this assignment of error, Thompson also argues that his counsel was ineffective for failing to file a motion to suppress the pretrial identification process; this argument will be considered in the third assignment of error.

defendants' right to due process. *Neil v. Biggers*, 409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). But because Thompson failed to object to the identification procedure at trial, he has waived all but plain error. *State v. Rox*, 8th Dist. No. 89244, 2007-Ohio-6315, 2007 WL 4200671, ¶ 6. "Under the plain-error analysis * * * and, in order to warrant a reversal of the convictions, [a party] must establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions." *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

{¶18} In determining the admissibility of challenged identification testimony, a reviewing court applies a two-prong test: (1) did the defendant demonstrate that the identification procedure was unduly suggestive; and, if so, (2) whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. *State v. Harris*, 2d Dist. No. 19796, 2004-Ohio-3570, 2004 WL 1506227, ¶ 19; *State v. Thompson*, 8th Dist. No. 90606, 2009-Ohio-615, 2009 WL 344858, ¶ 32. Thus, this court must determine "whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." *State v. Wills*, 120 Ohio App.3d 320, 324-325, 696 N.E.2d 1072 (8th Dist. 1972).

{¶19} If a defendant meets the first prong, then the second part of the inquiry focuses upon five factors necessary to assess the reliability of the identification, despite an unduly suggestive procedure: (1) the witness's opportunity to view the defendant at the time of the crime, (2) the witness's degree of attention at the time of the crime, (3) the accuracy of the witness's description of the defendant prior to the identification, (4) the

witness's level of certainty when identifying the defendant at the confrontation, and (5) the length of time that has elapsed between the crime and the confrontation. *Biggers* at *id.*; *State v. Williams*, 172 Ohio App.3d 646, 2007-Ohio-3266, 876 N.E.2d 991 (8th Dist.).

**{¶20}** Thus, our first step is to determine whether Thompson has established that the identification procedure was unreasonably suggestive. Davis testified that he was familiar with Thompson "from the bar." Detective Sowul testified that he developed Thompson as a suspect from Davis's description of his shooter and the name Davis gave him, "Chris Thomas." The detective outlined the process he used to generate the photo array, which included a photo of Thompson and five other similar looking males. He then gave the photos to a MetroHealth Hospital police officer to conduct the photo identification. Detective Sowul testified that this process, known as a blind administration, is where the administrator of the photo array does not know the identity of the suspect; this is to avoid "tainting the process." MetroHealth's police officer testified that he showed the photo array to Davis, who identified Thompson as his shooter. Davis circled Thompson's picture, and both Thompson and the officer signed the photo array.

**{¶21}** Based on these facts, there is no evidence to suggest that the pretrial identification of Thompson was unduly suggestive. Because the first prong has been met, we need not consider the reliability of the identification.

**{¶22}** Thompson also argues that the trial court erred in failing to instruct the jury that they could consider noncompliance with R.C. 2933.83 in determining the issue of

reliability. Because Thompson did not object to this omission at trial, we also review this claim solely for plain error.

**{¶23}** Effective July 7, 2010, any law enforcement agency or criminal justice entity in this state that conducts live lineups or photo lineups must adopt specific procedures for conducting the lineups. R.C. 2933.83. These procedures include the preference for a blind administrator when one is available. R.C. 2933.83(B). The statute further provides that

> "[w]hen evidence of a failure to comply with any of the provisions of this section, or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to [the statute], is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup." R.C. 2933.83(C)(3).

**{¶24}** Thompson argues that the photo lineup did not comply with R.C. 2933.83; therefore, he is entitled to a new trial. He claims that procedures set forth in the statute were not followed, but does not support this assertion with any citation to the record. App.R. 12(A)(2) provides that a reviewing court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based." In other words, it is not a reviewing court's job to make an appellant's argument for him. Absent evidence to support this claim and given our plain error review, we find Thompson's claim without merit.

**{¶25}** Accordingly, the first assignment of error is overruled.

<u>Admissibility of Evidence</u>

**{¶26}** In the second assignment of error, Thompson argues that the trial court erred by allowing into evidence recordings of his jailhouse phone calls.

**{¶27}** The admission or exclusion of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Evid.R. 901 governs the authentication of demonstrative evidence, including recordings of telephone conversations. The threshold for admission is quite low, and the proponent of the evidence need only submit "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "[T]he proponent must present foundational evidence that is sufficient to constitute a rational basis for a jury to decide that the primary evidence is what its proponent claims it to be." *State v. Tyler*, 4th Dist. No. 10CA3183, 2011-Ohio-3937, 2011 WL 3477172, ¶ 25, citing *State v. Payton*, 4th Dist. No. 01-CA2606, 2002-Ohio-508, 2002 WL 184922. A proponent may demonstrate genuineness or authenticity through direct or circumstantial evidence. *Tyler* at *id.*, citing *State v. Williams*, 64 Ohio App.2d 271, 274, 413 N.E.2d 1212 (8th Dist. 1979).

**{¶28}** For a recorded telephone call to be admissible, the recording must be "authentic, accurate, and trustworthy." *Tyler* at ¶ 26, citing *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263. But, because "conclusive evidence as to authenticity and identification need not be presented to justify allowing evidence to reach the jury," the evidence required to establish authenticity need only be sufficient to afford

a rational basis for a jury to decide that the evidence is what its proponent claims it to be. *State v. Bell*, 12th Dist. No. CA2008-05-044, 2009-Ohio-2335, 2009 WL 1395857, ¶ 17, 30.

{¶29} Thus, in this case, to establish that the audio recording was what the state claimed it to be, namely, recordings of jailhouse conversations between Thompson, Lumbus, and "Black," the state was not required to "prove beyond any doubt that the evidence is what it purports to be." *State v. Moshos*, 12th Dist. No. CA2009-06-008, 2010-Ohio-735, 2009 WL 1395857, ¶ 12, citing *State v. Aliff*, 4th Dist. No. 99CA8, 2000 WL 378370 (Apr.12, 2000). Instead, the state needed only to demonstrate a "reasonable likelihood" that the recording was authentic. *Bell* at ¶ 30, citing Evid.R. 901(B)(1). Such evidence may be supplied by, but is not limited to, the testimony of a witness with knowledge, voice identification, or by evidence that a call was made to the number assigned at the time by the telephone company to a particular person. *See* Evid.R. 901(B)(1), (5), and (6); *Moshos* at ¶ 14; *State v. Small*, 10th Dist. No. 06AP-1110, 2007-Ohio-6771, 2007 WL 4395621, ¶ 38.

{¶30} On appeal, Thompson concedes that Lumbus testified at trial that she recognized his voice in "several" of the recordings, but maintains that the recordings should have been deemed inadmissible because Sergeant Christopher and Anthony did not testify that the process by which they retrieved the recordings accurately reproduced and copied the original conversations.

{¶31} Evid. R. 901 provides for two methods by which a trial court may find that

these phone conversations are admissible. Evid.R. 901(B)(9) provides that a sound recording may be authenticated through evidence that demonstrates a process or system used that produces an "accurate result." And Evid.R. 901(B)(5) provides for authentication by voice identification "whether heard firsthand or through mechanical or electronic transmission or recording." Consequently, it was not necessary that Christopher and Anthony testify to the procedure by which they reproduced and copied Thompson's jailhouse phone calls. Moreover, a review of Anthony's testimony evidences that she explained the process by which the phone calls were recorded and downloaded.

{¶32} Lumbus admitted to receiving several calls from Thompson and identified his voice on many of the calls. This coupled with the phone records and the testimony of Sergeant Christopher and Anthony were sufficient to constitute a reasonable showing of authenticity. As to whether the voice on the recordings was indeed Thompson was a question of fact for the jury to determine. Accordingly, the trial court did not abuse its discretion in allowing the recordings into evidence.

{¶33} The second assignment of error is overruled.

Ineffective Assistance of Counsel

{¶34} In the third assignment of error, Thompson claims he was denied the effective assistance of trial counsel. We disagree.

{¶35} "The benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to succeed on a claim of ineffective assistance of counsel, Thompson must satisfy a two-prong test: first, he must demonstrate that his trial counsel's performance was deficient. *Id.* at 687. If he can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance. *Id.* To show prejudice, Thompson must establish there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is one sufficient to erode confidence in the outcome. *Id.* at 694.

{¶36} An attorney who is licensed in Ohio is presumed competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301, 209 N.E.2d 164 (1965). Therefore, the burden of showing ineffective assistance of counsel is on the party asserting it. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267.

{¶37} Thompson bases his ineffective assistance of counsel claim on counsel's failure to file a motion to suppress and failure to request that the weapons charge be bifurcated. Thompson blames his counsel's errors, in part, on the fact that he retained his attorney a week before trial.

{¶38} Failure to file a motion to suppress may constitute ineffective assistance of

counsel if there is a "solid possibility" that the trial court would have suppressed the evidence. *State v. Pimental*, 8th Dist. No. 84034, 2005-Ohio-384, 2005 WL 273009. As we discussed under the first assignment of error, Thompson is unable to show that the identification procedure was unduly suggestive. Thus, filing a motion to suppress would have been futile. As such, defense counsel was not ineffective for failing to file such a motion.

{¶39} We are more troubled by defense counsel's decision not to request that the weapons under disability charge be bifurcated from the other charges. As Thompson points out, this court has previously reversed a conviction based on this error. *State v. Jenkins*, 8th Dist. No. 91100, 2009-Ohio-235, 2009 WL 147654. But the decision in *Jenkins* was based on the cumulative nature of defense counsel's errors, not solely on the failure to move to bifurcate a disability charge.

{¶40} In this case, after reviewing the entire record, we cannot conclude that defense counsel's performance fell below an objective standard of reasonable representation. The failure to bifurcate the disability charge did not taint the entirety of the proceedings to the extent that a reasonable probability exists that the outcome of trial would have been different had the charge been separated.

{¶41} Therefore, Thompson was not afforded ineffective assistance of counsel. The third assignment of error is overruled.

{¶42} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR