JOURNAL ENTRY and OPINION
{¶ 1} Appellant Timothy Taylor appeals his conviction and sentence. He assigns the following errors for our review:
"I. The trial court erred in failing to grant appellant's Criminal Rule 29 motion for acquittal regarding the charge of aggravated murder since the State failed to produce sufficient evidence of prior calculation and design."
"II. The trial court erred in failing to instruct the jury on the offense of voluntary manslaughter."
"III. The trial court erred in its instruction on `flight'."
"IV. Appellant's conviction of aggravated murder was against the manifest weight of the evidence."
"V. The trial court erred by abusing its discretion in failing to exclude the State's witnesses Timothy Davis, Elisha Harris, Kevin McBride, Lauren Brooks, William Johnson, and James Johnson from testifying at trial."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Taylor's conviction and sentence. The apposite facts follow.
 The Fatal Shooting of Raymond Cooper {¶ 3} The State of Ohio tried Timothy Taylor for the fatal shooting of Raymond Cooper. The facts in the State's case showed that Taylor and Cooper were friends. Taylor claimed Cooper owed him some money. Cooper's sister testified, on the day of the shooting, Taylor asked her to drive him to a pawnshop, but she refused. She described Taylor as very agitated and hyper on that day. Prior to the shooting, Taylor had complained about people owing him money and stated in her presence that "he was going to get them."[1]
 {¶ 4} On the day of the shooting, Cleo Bell stated she heard three gunshots. The shots came from the courtyard of her apartment building in the Morris Black Housing Project. She then observed from the front of her apartment building, Taylor standing over Cooper and Cooper faced down over a sewer cover. She observed Taylor leave on his bike and several of the onlookers lifted Cooper and placed him in a car.
 {¶ 5} The evidence showed that the FBI had received information from the Cleveland office that a warrant existed for Taylor's arrest for unlawful flight to avoid prosecution ("UFAP"); and that he was located in Tuscaloosa, Alabama.
 {¶ 6} Taylor's grandfather testified that Taylor came to Tuscaloosa to visit his ailing mother, and while there he told him that he had shot a man in Cleveland who owed him money. Taylor's grandmother's testimony was consistent with her husband, but she added she did not believe that he had shot someone.
 {¶ 7} The FBI executed the warrants and arrested Taylor. Taylor made a statement that he had been in Alabama since August 16, 2004. When the agent informed Taylor that a "house full" of people saw him shoot Cooper on September 27, 2004, Taylor responded hurriedly that "we was outside."[2]
 {¶ 8} Other witnesses indicated that Cooper was involved in a dice game when Taylor approached Cooper, and the two men argued over money. Taylor then shot Cooper and walked over and fired another shot. Taylor stated "forget the ambulance. You all need to call the morgue. He's through."[3] Taylor then stated "I told you I wasn't playing."[4]
 {¶ 9} One of the witnesses testified that after Cooper and Taylor argued, Cooper continued to play the dice game and Taylor shot him in the back shoulder and walked away, returned and shot Cooper again. This witness verified that Taylor remarked to him that he was owed $2,500 and as soon as he obtained a gun, he planned to retaliate against the person. Further, this witness claimed Cooper had won $15,000 in an Ohio Lottery game. This witness verified that he had several cases pending in both federal and state courts.
 {¶ 10} After the State's case, Taylor moved for a judgment of acquittal.
 Motion for Acquittal {¶ 11} In the first assigned error, Taylor argues the trial court erred when it failed to grant his motion for acquittal of aggravated murder. He argues the State failed to produce sufficient evidence of prior calculation and design. We disagree.
 {¶ 12} Crim.R. 29(A) provides, in part:
"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 13} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[5]
 {¶ 14} In the instant case, Taylor contends that the State failed to satisfy the degree of proof necessary to establish that he acted with prior calculation and design. The record before us belies this assertion.
 {¶ 15} The phrase "prior calculation and design" was employed to indicate a studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim.[6] No bright-line test exists to determine whether prior calculation and design is present, instead each case must be decided on a case-by-case basis and viewed under the totality of the circumstances.[7]
 {¶ 16} In State v. Jenkins,[8] the Ohio Supreme Court set forth the following three factors that may be considered to determine if the murder was committed with prior calculation and design: (1) whether the accused and the victim knew each other; (2) whether there was thought or preparation in choosing the murder weapon or the murder site; and (3) was the act "drawn out" or "an almost instantaneous eruption of events." Neither the degree of care nor the length of time are critical factors in themselves, but they must amount to more than a momentary deliberation.[9] Prior calculation and design can be found even when the plan to kill was quickly conceived and executed.[10]
 {¶ 17} Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found beyond a reasonable doubt that Taylor committed the murder with prior calculation and design. Here, the record reveals that Taylor was angry at Cooper for not repaying a debt of $2,500, despite recently winning $15,000 in the Ohio Lottery. One week prior to the fatal shooting of Cooper, several individuals observed Taylor visibly upset about the fact that a number people, including Cooper, owed him money and had refused to repay him. Several witnesses testified that Taylor and Cooper were feuding for about a week prior to the shooting. These same individuals testified they heard Taylor threaten deadly force if he was not repaid. James Johnson testified that two days before the fatal shooting, he heard Taylor threaten to kill Cooper if he was not repaid.
 {¶ 18} The record also reveals that Taylor owned a gun prior to the fatal shooting. Timothy Davis, friend to both Taylor and Cooper, testified that he encountered Taylor earlier on the day of the shooting. Davis testified that he observed Taylor at the Morris Black Housing Project trying to secure bullets for his gun, and when Taylor asked one individual for bullets, Taylor stated he "was through with somebody."
 {¶ 19} The record is abundant that on the fatal night Taylor confronted Cooper about the $500 and a heated argument erupted with the two men exchanging profanities. Several witnesses testified that Taylor shot Cooper in the back of his shoulder as Cooper turned to roll the dice. When Cooper stumbled and fell on the sewer cover, witnesses heard Taylor say "I told him I wasn't playing." Taylor walked toward Cooper and fired again, and then stated "forget the ambulance, call the morgue, this nigger is dead."
 {¶ 20} The record before us reveals that Taylor was burning with anger over Cooper's refusal to repay the loan, despite having won $15,000 in the Ohio Lottery. Taylor made it known that he was angry at Cooper and talked about what he was going to do if he was not paid. Taylor prepared to carry his plan into action by openly securing bullets for his gun. On the fatal night, he executed his plan, by shooting Cooper at close range, and as Cooper stumbled and fell, he walked over and shot him again.
 {¶ 21} We conclude the evidence before us reveals a scheme designed to implement the calculated decision to kill. Therefore, the jury's verdict of prior calculation and design is justified.[11] The jury could have reasonably inferred from this evidence that Taylor thought about shooting Cooper for some time prior to that fatal night, secured bullets and took the gun with him to the Morris Black Housing Project with an intention to use it when an opportunity presented itself, and then seized the opportunity to kill Cooper during the confrontation. Therefore, the jury could have reasonably found the required element of "prior calculation and design." Accordingly, we overrule the first assigned error.
 Manifest Weight {¶ 22} In the fourth assigned error, Taylor argues his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 23} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion.[12]
When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[13]
 {¶ 24} Taylor contends many of the witnesses who testified for the State were not credible, because they were Cooper's close friends. We are not persuaded.
 {¶ 25} The record indicates that Taylor, Cooper, and many of the witnesses who testified at trial grew up together and were all close friends with each other. Several witnesses testified that they were friends to both Taylor and Cooper. Several of the witnesses had criminal records and several had pending federal or state criminal charges at the time of the trial. Several of these witnesses appeared at trial in jail outfits. However, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.[14] Here, the jury apparently found the witnesses to be credible. We find nothing in the record to indicate otherwise.
 {¶ 26} In light of the evidence produced at trial, it cannot be said that the jury lost its way or created such a miscarriage of justice that Taylor's conviction must be reversed. The record is replete with testimony that about a week before the fatal shooting, Taylor was feuding with Cooper about Cooper's refusal to repay him the $500. The record also indicates that Taylor threatened to kill Cooper if the money was not repaid. There were several eyewitnesses to the fatal shooting. Finally, Taylor told his maternal grandparents that he shot a man in Cleveland, who owed him money.
 {¶ 27} In light of this evidence, it is apparent that Taylor's conviction for aggravated murder was not against the weight of the evidence. Accordingly, we overrule the fourth assigned error.
 Jury Instruction/Voluntary Manslaughter {¶ 28} In the second assigned error, Taylor argues the trial court erred by failing to instruct the jury on the offense of voluntary manslaughter. We disagree.
 {¶ 29} R.C. 2903.03 provides:
"(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another.
"(B) Whoever violates this section is guilty of voluntary manslaughter, an aggravated felony of the first degree."
 {¶ 30} Voluntary manslaughter is an inferior degree of aggravated murder.[15] Pursuant to R.C. 2903.03, voluntary manslaughter is a single offense that, under certain circumstances, allows a defendant to mitigate a charge of murder to manslaughter.[16] Further, the crime comprises elements which must be proven by the State and mitigating circumstances that the defendant must establish.[17] In Rhodes, the Ohio Supreme Court held that:
"[A] defendant on trial for murder or aggravated murder bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, R.C. 2903.03(A), in order for the defendant to be convicted of voluntary manslaughter rather than murder or aggravated murder. The court shall instruct the jury on the offense of voluntary manslaughter if the defendant meets his burden of production with respect to evidence of one or both of the mitigating circumstances of R.C. 2903.03(A)."[18]
 {¶ 31} Further, with lesser included offenses, a defendant is entitled to an instruction on an inferior degree of the indicted offense when the evidence is such that a jury could both reasonably acquit him of the indicted offense and convict him of the inferior offense.[19] Thus, when the defendant seeks an instruction on voluntary manslaughter as an inferior degree of aggravated murder, some evidence of the mitigating circumstance described in R.C. 2903.03 will satisfy this test and entitle him to the instruction.[20]
 {¶ 32} The evidence in the present case was insufficient to support an instruction on voluntary manslaughter. The record does not indicate that Cooper seriously provoked Taylor into using deadly force. The failure to repay a $500 debt and the exchange of profanities is insufficient provocation to justify deadly force.
 {¶ 33} During oral argument, Taylor's lawyer argued that Cooper had physically threatened Taylor. According to our reading of the record, there does not exist any threats of physical harm by Cooper to Taylor that would remotely justify Taylor to use deadly force.
 {¶ 34} Further, the evidence indicates that after Taylor shot Cooper the first time, Cooper fell to the ground and Taylor walked away momentarily, then walked back, fired a second shot and advised the onlookers to call the morgue. Accordingly, we overrule the second assigned error.
 Jury Instruction/Flight {¶ 35} In the third assigned error, Taylor argues the trial court erred by giving a jury instruction on flight. We disagree.
 {¶ 36} The decision whether to issue an instruction on "flight" rests within the sound discretion of the trial court.[21] Absent an abuse of discretion, the trial court's decision will not be reversed on appeal.[22]
 {¶ 37} A reviewing court may not judge a single instruction to the jury in artificial isolation.[23] Rather, in determining whether a jury instruction constituted prejudicial error, an appellate court must determine, from the record, whether such instruction may have resulted in a manifest miscarriage of justice.[24]
 {¶ 38} Flight from justice "means some escape or affirmative attempt to avoid apprehension."[25] It is well established that evidence of "flight" is admissible as tending to show consciousness of guilt.[26] Thus, a trial court does not abuse its discretion by issuing an instruction on "flight" if sufficient evidence exists in the record to support the charge.[27]
 {¶ 39} Here, there was ample evidence presented at trial to support the trial court's decision to give the jury an instruction on flight. The record reveals that after the shooting, Taylor fled the scene, traveled to Alabama, where he was subsequently apprehended by FBI agents based on an Unlawful Flight to Avoid Prosecution ("UFAP") warrant. When apprehended, Taylor claimed that he had gone to Alabama to be with his dying mother. Taylor also claimed that he had been in Alabama from August 2004, before the alleged shooting, through October 2004.
 {¶ 40} Upon a thorough review of the record, we find that sufficient evidence existed to support the flight instruction. It is clear from the record that Taylor fled from the scene of the shooting before the police arrived and traveled to Alabama in order to avoid apprehension. Accordingly, the trial court did not abuse its discretion by instructing the jury on flight. Accordingly, we overrule the third assigned error.
 Exclusion of Testimony {¶ 41} In the fifth assigned error, Taylor argues the trial court abused its discretion in allowing several State witnesses to testify, because their identities were only disclosed four days prior to trial. We disagree.
 {¶ 42} The trial court has discretion to provide appropriate relief for a discovery violation, including granting a continuance, excluding evidence, or making any other order it deems just under the circumstances.[28] We review a judge's grant or denial of relief under Crim.R. 16(E)(3) for abuse of discretion.[29] The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[30]
 {¶ 43} Here, a review of the record does not indicate any evidence of a discovery violation. The trial court conducted a hearing on the matter, which revealed that the State provided Taylor's defense counsels with the names of the disputed witnesses four days prior to trial. At the hearing, the State represented that they had complied with Taylor's original discovery request, and, despite great difficulty in obtaining the names and addresses of witnesses, they had updated the discovery request as more names became available.[31]
 {¶ 44} We find support for the State's argument in the testimony of Detective Henry Veverka of the Cleveland Police Department, who testified in pertinent part as follows:
"Det. Veverka: When you are dealing with homicide, a lot of your people that are there when it happens, they don't want to come forward for various reasons. If someone witnesses something that happens, there's fear of retribution. There's the simple fact that they don't want to be involved. They don't want to be bothered. There's also the fact that if somebody did see something, they don't want to be labeled as a rat, as coming forward and telling the police what they saw. And that was the problem that we found in this investigation. Later on, as we spoke with people, Dave Sargent was rushed to the scene, and a statement was taken from him at the Homicide Unit. And we didn't have any clear names. We had Day-Day, Africa, Pookie, Nay-Nay. It's difficult to locate people just on nicknames."[32]
 {¶ 45} The trial court gave defense counsel time to interview each of the disputed witnesses prior to them taking the stand. We conclude that this was reasonable under the circumstances. The trial court did not abuse its discretion by allowing the witnesses to testify. Accordingly, we overrule the fifth assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, JR., P.J., and Calabrese, JR., J., concur.
[1] Tr. at 516.
[2] Tr. at 676.
[3] Tr. at 744.
[4] Tr. at 750.
[5] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[6] State v. Taylor (1997), 78 Ohio St.3d 15, 19.
[7] Id. at 20.
[8] (1976), 48 Ohio App.2d 99.
[9] Taylor, 78 Ohio St.3d at 19.
[10] State v. Green (2000), 90 Ohio St.3d 352, 358; State v.Gerish (Apr. 22, 1994), 7th Dist. No. 92CA85.
[11] State v. Cotton (1978), 56 Ohio St.2d 8.
[12] State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
[13] State v. Glass, Cuyahoga App. No. 81607, 2003-Ohio-879, citing State v. Otten (1986), 33 Ohio App.3d 339, 340.
[14] State v. DeHass (1967), 10 Ohio St.2d 230.
[15] State v. Tyler (1990), 50 Ohio St.3d 24, 36.
[16] State v. Rhodes (1992), 63 Ohio St.3d 613, 617.
[17] Id.
[18] Id. at 620.
[19] Tyler, supra, 50 Ohio St.3d at 37.
[20] Id.
[21] State v. Soto (Jan. 22, 1998), Cuyahoga App. No. 72062.
[22] State v. Sims (1984), 13 Ohio App.3d 287.
[23] State v. Gee (June 2, 1994), Cuyahoga App. Nos. 64410, 64411.
[24] State v. Adams (1980), 62 Ohio St.3d 151.
[25] State v. Wesley, Cuyahoga App. No. 80684, 2002-Ohio-4429, citing United States v. Felix-Gutierrez
(C.A.10, 1991), 940 F.2d 1200, 1207.
[26] State v. Richey (1992), 64 Ohio St.3d 353.
[27] See United States v. Dillon (1989), 870 F.2d 1125;State v. Hambrick (Feb. 1, 2001), Cuyahoga App. No. 77686.
[28] Crim.R. 16(E)(3).
[29] State v. Parson (1983), 6 Ohio St.3d 442.
[30] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[31] Tr. at 7.
[32] Tr. at 914.