OPINION
{¶ 1} Defendant-appellant, Dean D. Small, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated murder, with accompanying specifications, and having a weapon while under disability. Because (1) defendant's speedy trial rights were not violated, (2) the trial court did not abuse its discretion in the admission of evidence, (3) prosecutorial misconduct did not deprive *Page 2 
defendant of a fair trial, and (4) the sufficiency and manifest weight of the evidence support defendant's convictions, we affirm.
 {¶ 2} By indictment filed on March 17, 2006, defendant was charged with one count of aggravated murder in violation of R.C 2903.01 in the death of Robel Medhin. The charge carried two firearm specifications and one repeat violent offender specification under R.C. 2941.145, 2941.141
and 2941.149, respectively. The second count of the indictment charged defendant with having a weapon under disability, in violation of R.C.2923.13. Although the specifications were tried to the bench, a jury determined the remaining charges. After defendant was found guilty of all charges and specifications, the trial court sentenced defendant accordingly. Defendant appeals, assigning the following errors:
 FIRST ASSIGNMENT OF ERROR
 Appellant was denied a speedy trial in violation of R.C. 2945.71.
 SECOND ASSIGNMENT OF ERROR
 The trial court erred in admitting testimony from Tesfalem Elos in violation of the hearsay rules, as set forth in Evid.R. 801 and 802, thereby, depriving Appellant of due process and a fair trial under the state and federal Constitutions.
 THIRD ASSIGNMENT OF ERROR
 There was insufficient evidence to establish that Appellant acted with prior calculation and design and the jury's verdict was against the manifest weight of the evidence, thereby, depriving Appellant of his due process protections under the state and federal Constitutions. *Page 3 
 FOURTH ASSIGNMENT OF ERROR
 Appellant was denied his right to a fair trial because of prosecutorial misconduct during the closing argument.
For ease of discussion, we address defendant's assignments of error out of order.
I. First Assignment of Error {¶ 3} In his first assignment of error, defendant contends the trial court erred in overruling his motion to dismiss. Specifically, defendant asserts the state violated his right to a speedy trial by failing to bring him to trial within the time parameters set forth in R.C. 2945.71
et seq. Under R.C. 2945.71(C)(2), a person against whom a felony charge is pending must be brought to trial within 270 days of arrest. For purposes of computing time under the statute, each day a defendant is held in jail in lieu of bond counts as three days. R.C. 2945.71(E).
 {¶ 4} Defendant was indicted on March 17, 2006. Because he was incarcerated pretrial, the state was required to bring him to trial within 90 days. Defendant consented to two continuances that, pursuant to R.C. 2945.72(H), tolled the speedy trial clock from May 9 to June 6 and from June 6 to August 16. With the tolling from the two continuances factored into the speedy trial calculations, defendant's trial began within 93 days. The trial court nonetheless denied defendant's motion to dismiss because it determined an additional 20 days were tolled when defendant requested discovery from the state.
 {¶ 5} A demand for discovery or a bill of particulars is a tolling event under R.C. 2945.72(E). State v. Brown, 98 Ohio St.3d 121,2002-Ohio-7040, syllabus. Brown explained that unless tolling were permitted, a defendant could file discovery requests *Page 4 
close to the scheduled trial date in an attempt to trigger a speedy trial violation, causing the prosecution to rush to complete discovery requests to avoid violations. Id. at ¶ 23.
 {¶ 6} In an attempt to distinguish Brown, defendant contends the speedy trial clock should not be tolled, as "there was no actual or tangible delay created by the obligation to provide discovery." (Defendant's brief, 18.) He asserts that since legal interns often handle discovery matters, his discovery request did not impact the prosecution's ability to prepare for trial. The Ohio Supreme Court rejected the same argument in State v. Sanchez, 110 Ohio St.3d 274,2006-Ohio-4478, holding the state did not have an affirmative duty to show the discovery request caused a delay in trial preparation. Rather, "[i]t is the filing of the motion itself, the timing of which the defense can control, that provides the state with an extension." Id. at ¶ 26.
 {¶ 7} Sanchez, however, does not permit the state to needlessly delay proceedings. Indeed, Sanchez observed that "[a]lthough outside time limits for response may be set by local rule, in many cases, the state will not need the entire time." Id. at ¶ 27. See, also, State v.Palmer, 112 Ohio St.3d 457, 2007-Ohio-374, at ¶ 21. Loc.R. 75.03 of the Franklin County Court of Common Pleas, requiring a party to respond within 21 days after receiving a demand for discovery, sets a reasonable time period under the facts of this case; nothing in the record demonstrates other circumstances that would require adjusting the time period set forth in the rule to achieve reasonableness. Id. State v.Lair, Franklin App. No. 05AP-1083, 2006-Ohio-4109, at ¶ 21. Because the state's 20-day response time here was less than the time allotted in the local rule, it is reasonable and tolled the speedy trial provisions during the time between the discovery demand and the *Page 5 
state's reply. The trial court properly overruled defendant's motion to dismiss for violation of his speedy trial rights. Defendant's first assignment of error is overruled.
II. Third Assignment of Error {¶ 8} Defendant's third assignment of error asserts (1) the state presented insufficient evidence to establish defendant acted with prior calculation and design, and (2) the verdict is against the manifest weight of the evidence.
A. Sufficiency of the Evidence {¶ 9} Generally, a review of the sufficiency of the evidence is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. We construe the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus;State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. Within those parameters, defendant contends the record "is devoid of any direct proof" he was "operating under a plan" to kill Medhin. (Defendant's brief, 28.) Asserting the murder occurred on the spur of the moment, defendant contends such circumstances are "no longer sufficient to demonstrate premeditated murder." State v. Toth (1977),52 Ohio St.2d 206, overruled on other grounds, State v. Muscatello (1978),55 Ohio St.2d 201, 203.
 {¶ 10} In 1974, the "prior calculation and design" standard replaced the more traditional "deliberate and premeditated malice" standard.State v. Cotton (1978), 56 Ohio St.2d 8, 10-11. Under the former standard, "a killing could be premeditated even though conceived and executed on the spur of the moment." Id. "Prior calculation and design," however, is a more stringent standard. Id. It continues to "embody the classic concept of *Page 6 
the planned, cold-blooded killing while discarding the notion that only an instant's prior deliberation is necessary." State v. Taylor (1997),78 Ohio St.3d 15, 19, certiorari denied, 522 U.S. 851. Rather than instantaneous deliberation, prior calculation and design requires a scheme designed to implement the calculated design to kill.Cotton, at 11. "Prior calculation and design requires `some kind of studied analysis with its object being the means by which to kill.' "State v. Ellenwood (Sept. 16, 1999), Franklin App. No. 98AP-978, quoting State v. Jenkins (1976), 48 Ohio App.2d 99, 102.
 {¶ 11} While the Ohio Supreme Court declined to find prior calculation and design in "explosive, short-duration situations," the court nonetheless upheld some "short-lived emotional situations" that do not fit the classic mold of a "planned, cold-blooded killing."Taylor, at 19-20. Because no bright-line test or rigid set of factors defines prior calculation and design, the determination of whether an accused acted with prior calculation and design "turns on the particular facts and evidence presented at trial." Id. at 20. Consequently, "[w]here evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." Cotton, paragraph three of the syllabus.
 {¶ 12} The state can prove "prior calculation and design" from the circumstances surrounding a murder in several ways: (1) evidence of a preconceived plan leading up to the murder, (2) evidence of the perpetrator's relationship with the victim, including evidence of any strains in that relationship, or (3) evidence that the murder was executed in such a manner that circumstantially proved the defendant had a preconceived plan to *Page 7 
kill. See, e.g., Taylor, supra, at 19; State v. Cassano,96 Ohio St.3d 94, 2002-Ohio-3751, certiorari denied (2003), 537 U.S. 1235; State v.Goodwin (1999), 84 Ohio St.3d 331; State v. Campbell (2000),90 Ohio St.3d 320. Prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes. State v. Coley (2001), 93 Ohio St.3d 253, 264, citing State v.Palmer (1997), 80 Ohio St.3d 543, 567-568 and Taylor, at 20-23.
 {¶ 13} Here, the state's evidence reveals that on February 8, 2005, Medhin's body was discovered lying on the ground near an apartment building; Medhin died from a single gunshot wound to the mouth. Earlier that day, Medhin and Regina Long, defendant's girlfriend, were seen walking together around the apartment building and surrounding area. Long informed defendant she was pregnant with his child, and Sharon Small, defendant's wife, learned Long was defendant's girlfriend. That night an argument broke out among defendant, Small, and Long. As the two women argued, defendant left but soon returned. He walked past the women, asking if they were still talking about him. According to Small, defendant was "still agitated, mad." (Tr. 215.)
 {¶ 14} At that moment, Medhin appeared and began walking toward Long's car. Defendant, who is of Jamaican descent, began to yell at Medhin, asking him why he was not at work and calling him a "blood clot," a derogatory name in Jamaican parlance. (Tr. 217.) After a few minutes, Small heard defendant tell Medhin to open his mouth. She looked toward the two men and saw defendant had backed Medhin up against the building, but, due to their relative sizes, she could see only defendant's back. She next heard a thud and saw defendant turn around. He had a gun in his hand and said, "Look what you bitches made me do." Id. at 218. *Page 8 
 {¶ 15} Jeffrey Hairston, a neighbor and friend of Small and defendant, witnessed the murder. He heard the argument involving Small, defendant, and Long; he also observed defendant leave and then return less than five minutes later. Hairston saw defendant grab a young man who was walking past him and slam him against a wall. Defendant then pulled a gun out of his pocket and shot the young man in the mouth. Hairston reported hearing a pop as the gun went off, and the victim fell to the ground.
 {¶ 16} The execution-style killing satisfies the prior calculation and design requirement for aggravated murder. If the victim is killed in a cold-blooded, execution-style manner, the killing bespeaks aforethought, and a jury may infer prior calculation. State v. Trewartha,165 Ohio App.3d 91, 2005-Ohio-5697, at ¶ 33, appeal not allowed,108 Ohio St.3d 1475, 2006-Ohio-665, and appeal not allowed, 110 Ohio St.3d 1413,2006-Ohio-3306, citing Campbell, Palmer, Taylor, and State v.Mardis (1999), 134 Ohio App.3d 6, 19. By defendant's telling Medhin to open his mouth, and then by shooting him through his open mouth, a jury could find beyond a reasonable doubt that defendant's actions demonstrated prior calculation and design.
 {¶ 17} Additional evidence bolsters that conclusion. Defendant and the victim were friends, but their friendship was strained. Small testified defendant was angry with Medhin because Medhin owed defendant money. One of Medhin's friends, Tesfalem Ellos, testified Medhin so believed his life was in danger because of a $900 debt that Medhin asked Ellos for a gun. According to Ellos, Medhin said that "if he didn't give the gentleman the money by nine o'clock that he might not be here tomorrow." (Tr. 303.)
 {¶ 18} Ellos did not know to whom Medhin owed the money, but on the night of the murder Medhin made a phone call on Ellos' phone and told the person who answered *Page 9 
that he did not have the money. After learning of Medhin's death, Ellos retrieved the phone number and called it. The person who answered the phone had a Jamaican accent and said his name was Dominique, a name that Small and Hairston testified defendant used. Ellos and Dominique discussed arrangements under which Ellos would repay Medhin's debt.
 {¶ 19} Given that background, defendant's angry word exchange with Medhin before shooting him and the nature of the shooting, the jury, construing the facts in favor of the state, could find the elements of aggravated murder proven beyond a reasonable doubt. See State v.Johnson, Franklin App. No. 06AP-67, 2007-Ohio-2385, State v.Taylor, Cuyahoga App. No. 86449, 2006-Ohio-3019, and Taylor, supra.
B. Manifest Weight of the Evidence {¶ 20} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt.Conley, supra; Thompkins, supra, at 387 (stating that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of conflicting testimony"). The court, reviewing the entire record, determines whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the manifest weight of the evidence are *Page 10 
reserved for cases where the evidence weighs heavily in favor of the defendant. State v. Often (1986), 33 Ohio App.3d 339, 340.
 {¶ 21} In challenging the manifest weight of the evidence, defendant does not point to any particular element of the offense of aggravated murder, but attacks the evidence against him as "inconsistent and inconclusive." (Defendant's brief, 31.) Based on that evidence, defendant suggests Small and Hairston did not actually witness the murder, but that Small testified against her husband because "she believed that she would be incarcerated if she did not and she was clearly aware that the prosecution and police believed that her husband had committed" the murder. Id. at 34. Defendant offered an alternative explanation of the crime: "the killing was likely committed as part of a drug deal that went bad, with the offender(s) still at large." Id. at 29.
 {¶ 22} While our review of the manifest weight of the evidence involves a limited weighing of the evidence, inconsistencies in the testimony generally do not render the verdict against the manifest weight of the evidence. State v. Thompson (1998), 127 Ohio App.3d 511,529, discretionary appeal not allowed, 83 Ohio St.3d 1451 (stating that "[a] reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder"); State v.Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v.Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 (noting that "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence"). Rather, the jurors may discount portions of a witness' testimony and accept only a part of it as true. State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667. *Page 11 
 {¶ 23} Defendant initially notes Small testified against defendant as part of a plea bargain that permitted her to avoid incarceration; she pleaded guilty to a third-degree felony charge of obstruction of justice for initially telling police she had no information about the killing. He further points out discrepancies in Small's testimony, the physical evidence, and Hairston's testimony, arguing "[Small] did not see Hairston outside the apartments at any point during her exchange with [Long], even though Hairston claimed that he was standing in full sight of her; she claimed that the gun was pressed inside the victim's mouth even though there was no evidence of gunpowder residue; and she claimed that she and Hairston left shortly after the shooting even though Hairston remained in [a nearby] bar till 2:00 a.m." (Defendant's brief, 34-35.)
 {¶ 24} With respect to defendant's contention that Small testified to the gun being placed inside the victim's mouth, the record reveals that Small did not make such a statement; Hairston did. The record further shows Hairston's statements to police prior to the trial were inconsistent with his trial testimony, as Hairston told the police he did not see the gun placed inside the victim's mouth. Under questioning from the court, Hairston attempted to clarify the inconsistency, stating that from the angle at which he viewed the killing, the gun appeared to be touching the victim's face. To the extent Hairston continued to maintain the gun touched the victim's mouth, his testimony is inconsistent with the coroner's testimony that no gunpowder was found on Medhin's face or in his mouth, indicating the gunshot was a "distant wound" coming from "greater than two to three feet away muzzle-to-target." (Tr. 347-349.)
 {¶ 25} Although the inconsistencies in the testimony of the state's witnesses realistically could cause a juror to question the credibility of certain portions of that *Page 12 
testimony, we cannot conclude the inconsistencies in the testimony render it so beyond belief that a reasonable juror could not accept it as true. Specifically, Small and Hairston both agreed on the key fact in this case: they both saw defendant shoot Medhin; indeed, defendant so admitted. Ellos' testimony not only supplied additional evidence of defendant's culpability, but challenged defendant's theory, as Ellos' testimony is not compatible with, as defendant asserted, an attempt to frame defendant. Although the possibility exists that Small and Hairston fabricated their testimony, the jury found it believable, and we cannot say the jury lost its way in so concluding. Accordingly, the verdict is not against the manifest weight of the evidence. Since sufficient evidence and the manifest weight of the evidence support the verdict, defendant's third assignment of error is overruled.
III. Second Assignment of Error {¶ 26} Defendant's second assignment of error alleges the trial court violated the hearsay rules in admitting testimony from Ellos concerning statements of Medhin and an individual calling himself Dominique. The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Hand, 107 Ohio St.3d 378, 2006-Ohio-18, at ¶ 92, citing State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. The judgment of the trial court will not be reversed absent a clear showing of an abuse of discretion. State v. Scott (June 24, 1997), Franklin App. No. 96APA04-492, citing State v. Hymore (1967),9 Ohio St.2d 122, 128. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. State v. Holloway, Franklin App. No. 02AP-984, 2003-Ohio-3298, at ¶ 14, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217. *Page 13 
 {¶ 27} Ellos testified Medhin made statements indicating Medhin owed money, feared for his life, and sought a gun for protection. Ellos further testified Ellos discussed the debt with a person he telephoned who had a Jamaican accent and identified himself as Dominique. Although the record does not clearly indicate the grounds on which the trial court admitted the statements, Ellos' testimony regarding Medhin's statements apparently was admitted under the present sense impression exception to the hearsay rule, while Ellos' testimony concerning the conversation with "Dominique" was deemed admissible because it was not offered to prove the truth of the matter asserted and thus was not hearsay. We address them separately.
A. Medhin's Statements {¶ 28} Defendant contends Medhin's statements do not qualify as a present sense impression because the necessary independent indicia of reliability is lacking. A present sense impression, according to Evid.R. 803(1), is a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate a lack of trustworthiness."
 {¶ 29} Defendant bases his argument on Ellos' reaction to Medhin's statement: Ellos did not believe Medhin because he thought Medhin was "just telling a fib." (Tr. 290, 292.) Defendant points out that under the Staff Notes to Evid.R. 803(1), "[t]he circumstantial guaranty of trustworthiness [of a present sense impression] is derived from the fact that the statement is contemporaneous and there is little risk of faulty recollection, and it is made to another who is capable of verifying the statement at the time it is made." Because Ellos did not believe the statements, defendant contends the statements lack credibility and should not have been admitted into evidence. *Page 14 
 {¶ 30} At the heart of defendant's contentions is the confusion evident in the record about which hearsay exception the court relied upon in permitting the testimony. The court referred to the exception for present sense impressions as its reason to admit Medhin's statements about fearing for his life and requesting a gun; the court reached its conclusion based on the prosecution's statement "that state of mind is a general present sense impression." (Tr. 271.)
 {¶ 31} The present sense impression exception to the hearsay rule, as described by the Staff Notes to Evid.R. 803(1), covers "declarations made by an observer at the time the event is being perceived." By contrast, the statements Medhin made about fearing for his life constitute expressions of a then existing state of mind and are admissible under Evid.R. 803(3), which provides an exception to the hearsay rule for "a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition." Testimony that a victim was fearful or apprehensive is permitted under the Evid.R. 803(3) exception. See State v. Miller, 96 Ohio St.3d 384, 2002-Ohio-4931, at ¶ 45, citing State v. Apanovitch (1987), 33 Ohio St.3d 19, 21-22.
 {¶ 32} Defendant's contention that Medhin's statements lacked credibility because Ellos did not believe him is unavailing. "Out-of-court statements about a declarant's then-existing mental condition are considered trustworthy because their spontaneity makes them as reliable as similar kinds of statements made on the witness stand." Miller, supra, at ¶ 46. Nothing in the rule requires that the recipient of the statement find it truthful. The trial court properly admitted the statements, even if the rationale for admitting them was incorrect. See State v. Allen (1996), 77 Ohio St.3d 172, 173 (noting "[i]t has long been established `that where the judgment is correct, a reviewing court is not authorized to *Page 15 
reverse such judgment merely because erroneous reasons were assigned as the basis thereof,' "quoting Agricultural Ins. Co. v. Constantine
[1944], 144 Ohio St. 275, 284).
 {¶ 33} Moreover, Medhin's statements that he owed money and was selling drugs are admissible as statements against interest under Evid.R. 804(B)(3), which excludes from hearsay "[a] statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true." The exception is available only when the declarant is unavailable to testify, a condition satisfied in this case. Additionally, corroborating circumstances must exist to indicate the trustworthiness of the statement. State v. Gilliam (1994),70 Ohio St.3d 17, 20, overruled on other grounds, State v. Madrigal (2000),87 Ohio St.3d 378; State v. Landrum (1990), 53 Ohio St.3d 107, 114. Here, Medhin's statements about selling drugs and subsequent debt are opposed to his penal and pecuniary interests. Because he made the statements to a friend voluntarily, without attempting to shift blame from himself, the statements are worthy of belief. See Hand, at ¶ 97.
 {¶ 34} Finally, the hearsay rule does not bar testimony about Medhin's offer to sell his basketball jersey or his request to borrow a gun, as both statements were in the form of questions. A question does not fall within the definition of hearsay as it does not constitute an "assertion." State v. Carter (1995), 72 Ohio St.3d 545, 549 (stating that "because a true question or inquiry is by its nature incapable of being proved either true or false and cannot be offered `to prove the truth of the matter asserted,' it does not *Page 16 
constitute hearsay"). See, also, State v. Leonard, 104 Ohio St.3d 54,2004-Ohio-6235, at ¶ 97.
B. Dominique's Statements {¶ 35} Defendant maintains the trial court improperly admitted Ellos' testimony about his phone conversation with "Dominique." The trial court apparently admitted the statements because they were not used to prove the truth of the matter asserted and thus were not subject to the hearsay rule. According to the trial court, the testimony offered amounted to nothing more than "that there was another human being with a Jamaican accent who said that stuff." (Tr. 268.)
 {¶ 36} Defendant, however, contends "the evidence had relevance only if it was offered to prove the truth of the matter asserted — that the person on the phone was [defendant] and that he was owed money by the victim. The evidence served no other rational purpose." (Defendant's brief, 22.) The state urges the testimony was admissible as a party opponent admission under Evid.R. 801(D)(2)(a), which provides that a statement offered against a party is not hearsay, even though it is an out-of-court statement offered to prove the truth of the matter asserted, when it is the party's own statement.
 {¶ 37} To render the statement admissible under Evid.R. 801(D)(2)(a), the state first needed to authenticate that the person to whom Ellos spoke on the phone was defendant: that defendant is "Dominique." See Evid.R. 901; State v. Williams (1979), 64 Ohio App.2d 271, 273. A piece of evidence is sufficiently authenticated or identified to pass the threshold of admissibility when "evidence [is] sufficient to support a finding that the matter in question is what the proponent claims."State v. Wheeler (July 16, 1993), *Page 17 
Montgomery App. No. 12290, citing Evid.R. 901(A). Conclusive proof of authenticity is not required. Id., citing State v. Easter (1991),75 Ohio App.3d 22, 25.
 {¶ 38} Several methods exist for authenticating a telephone conversation in the context of a criminal case. See State v.Carr-Poindexter, Montgomery App. No. 20197, 2005-Ohio-1571. Evidence that a call was made to the number the telephone company assigned at that time to a particular person can satisfy the authentication requirement, if the circumstances, including self-identification, show the person answering to be the one called. Evid.R. 901(B)(6). The method is unavailable in the present case, as the record does not disclose whether the number Ellos dialed was a number assigned to defendant's phone. Similarly, voice identification, under Evid.R. 901(B)(5), does not apply, as Ellos' testimony did not indicate he could identify Dominique's voice as that of defendant.
 {¶ 39} Evid.R. 901(B)(4), however, relies upon "distinctive characteristics" and contemplates that a caller may be identified because only he could utter the speech under the circumstances.Wheeler, supra. "A letter or a voice over the telephone may be related to a particular person by the very fact that the matters set forth in the letter or the telephone conversation were known peculiarly to a particular person." Evid.R. 901(B)(4), Staff Notes. Even so, the party seeking admission must produce "direct and circumstantial evidence which reasonably identifies the defendant as a party to a telephone conversation." Williams, supra, at 274. The mere fact that a caller identified himself as the defendant is insufficient. Id. at 275. Rather, the contents of the conversation, the characteristics of the speech itself, or the circumstances of the call, must render it improbable that the caller could be anyone other than the person the proponent claims him to be. Wheeler, supra. *Page 18 
 {¶ 40} Wheeler addressed the authenticity of a telephone call a robber allegedly made to his brother's hotel room. A police officer answered the call, posing as the robber's brother. The ensuing conversation revealed the location of the weapon used in the robbery. During the call, the caller used his brother's nickname and his mother's name. While noting such details were "perhaps * * * not facts peculiarly within the knowledge" of the defendant, Wheeler determined the facts, when combined with the other circumstances of the call, authenticated the call.
 {¶ 41} The telephone conversation between Ellos and "Dominique" likewise contains sufficient evidence to identify defendant as Dominique. "Dominique's" Jamaican accent and claim that Medhin owed him money, coupled with the testimony of Small and Hairston that defendant was known as "Dominique," had a Jamaican accent, and was owed money by Medhin, make it highly improbable that the person answering the phone was anyone other than defendant. Adding to identification reliability is the evidence the phone call originated with Ellos, who testified he did not know defendant, Long, Small, or Hairston. The chance an imposter also would have a Jamaican accent and would respond to an unexpected phone call in a manner tending to incriminate defendant is very slim; the evidence presented suffices to meet the requirements of Evid.R. 901(A).
 {¶ 42} As the state's evidence authenticates defendant as "Dominique," the statements made to Ellos during the telephone conversation constitute party opponent admissions and are admissible. Since the statements Medhin made fall within exceptions to the hearsay rule, and the statements defendant made as "Dominique" are not hearsay, the trial court did not err in allowing Ellos to testify about the statements.
 {¶ 43} Accordingly, defendant's second assignment of error is overruled. *Page 19 
IV. Fourth Assignment of Error {¶ 44} Defendant's fourth assignment of error claims that prosecutorial misconduct during the closing argument deprived him of his right to a fair trial.
 {¶ 45} Courts afford the prosecution a certain degree of latitude in making closing arguments. State v. Benge (1996), 75 Ohio St.3d 136, 141. Whether the prosecution's remarks constitute misconduct requires analysis as to: (1) whether the remarks were improper; and, if so, (2) whether the remarks prejudicially affected the defendant's substantial rights. State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 91, citing State v. Smith (1984), 14 Ohio St.3d 13, 14. Accord State v.Lott (1990), 51 Ohio St.3d 160, 165. The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor."Noling, supra, quoting Smith v. Phillips (1982), 455 U.S. 209, 219. The prosecution's isolated comments are not to be taken out of context and given their most damaging meaning. Noling, supra, at ¶ 94, citingDonnelly v. DeChristoforo (1974), 416 U.S. 637, 647. Rather, an appellate court must review a closing argument in its entirety to determine whether prejudicial error exists. Id., citing State v.Frazier (1995), 73 Ohio St.3d. 323, 342. The conviction must be affirmed if, based on the whole record, the prosecution's improper comments were harmless beyond any reasonable doubt. State v. Zimmerman (1985),18 Ohio St.3d 43, 45.
 {¶ 46} During closing argument, the prosecutor stated the case was not "a close call" but that it had to be tried because defendant had "not yet stood up" to take responsibility. (Tr. 415.) Defendant's counsel objected, but the objection was overruled. On appeal, defendant asserts the prosecution's comment on defendant's exercise of a *Page 20 
constitutional right is "highly improper and unfairly prejudicial" and serves as proper grounds for reversal. (Defendant's brief, 31.)
 {¶ 47} The prosecution's remark was improper, as the state properly admits in its brief. Given the strained relationship between defendant and Medhin, the execution-style manner of killing, the testimony of two eyewitnesses who observed defendant shoot Medhin, and defendant's admission of "[l]ook what you bitches made me do," (Tr. 218) we are compelled to conclude the prosecution's improper remarks were not a factor in defendant's conviction, particularly where the prosecution properly limited remaining closing remarks to a summation of the evidence and the trial court instructed the jury that the closing argument was not evidence. In the end, the remarks were not so prejudicial as to deny defendant a fair trial in light of the overwhelming evidence of his guilt. Accordingly, we overrule defendant's fourth assignment of error.
 {¶ 48} Having overruled defendant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 BROWN and BOWMAN, JJ., concur. BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1